Courtland N. Smith v. Commissioner.
Smith v. Commissioner
Docket No. 24188.
United States Tax Court
1950 Tax Ct. Memo LEXIS 27; 9 T.C.M. (CCH) 1084; T.C.M. (RIA) 50286; November 29, 1950
*27 Petitioner is a partner in a partnership which is engaged in the advertising business. In 1944, one of the partners died. The partnership agreement, among other things, contained a provision which reads: "His estate shall also be entitled to receive monthly for six (6) months a sum equal to the monthly advance payable to the deceased partner prior to his death." Under this provision the estate of the deceased partner was paid $3,333.32 in the months of November and December, 1944. The Commissioner has determined that this $3,333.32 is taxable income to the surviving partners and has taxed petitioner with his proportionate share thereof. Held, the payments were not made as a part of the purchase price of the deceased partner's interest but were of the same nature as advance payments which would have been made to the deceased partner if he had lived, and the Commissioner erred in his determination. The sum in question was not income to the surviving partners but was income to the estate of the deceased partner. Sidney Hess, 12 T.C. 773, followed. George Link, Jr., Esq., 17 John St., New York 7, N. Y., for the petitioner. Robert M. Willan, Esq., for the respondent. BLACK Memorandum *28 Findings of Fact and Opinion The Commissioner has determined a deficiency in petitioner's income tax for the year 1944 of $528.71. This deficiency is due to the fact that the Commissioner has added to the $37,459.26 net income disclosed by petitioner's return "(a) Additional partnership income $770.83." The Commissioner explains this adjustment in his deficiency notice, as follows: "(a) The increase of $770.83 in your income for the year 1944 is your 12 1/2 percent share of $3,333.32, the increase in the partnership income of Alley and Richards Company for that year. The amount of $3,333.32 represents the disallowance of a deduction of that amount claimed by the partnership for a payment made to the widow of a deceased partner. Such amount is not an ordinary and necessary business expense under the provisions of Section 23 (a) of the Internal Revenue Code." Petitioner by an appropriate assignment of error contests this adjustment. Findings of Fact Petitioner is an individual who filed his income tax return for the year 1944 with the Collector of Internal Revenue at Newark, New Jersey. During the year 1944, petitioner was a partner in a partnership conducting a general advertising business *29 under the name of Alley & Richards Company. As a senior partner petitioner was active in the management of the partnership. He was also what is known as an account executive in charge of the handling of several accounts, including the creation, planning and selling of advertising. The partnership agreement which was in effect during the year 1944 was entered into January 1, 1942. It provided, in part, as follows: "4. Net profits after deduction of periodic advances to partners as hereinafter provided for shall be distributed among the partners in proportion to their shares of capital. All losses shall be borne by the partners in proportion to their shares of capital. "5. There shall be two classes of partners, - Senior Partners and Junior Partners. Ernest V. Alley, Courtland N. Smith and H. L. Whittemore shall constitute the Senior Partners and George W. B. Hartwell, H. R. MacNamee, Harry M. Billerbeck, Deane H. Uptegrove and Joseph T. Coenen shall constitute the Junior Partners. "6. The decision of the following matters shall rest exclusively with a majority of the Senior Partners: (a) All questions of general business policy, (b) The necessity for additional capital, (c) The amount *30 of distributions by way of monthly or other periodic advances to be paid to the partners and the salaries of all employees, (d) The duties to be performed by each partner, (e) The establishment and maintenance of reserves of every character, and the amount or amounts to be carried to such reserves from time to time, (f) The terms and amounts of all distributions of profits to the partners. "7. This agreement shall endure for the calendar year 1942 and thereafter from year to year. Any partner may withdraw at the end of any calendar year provided any such withdrawing partner has given written notice to each of the other partners of his intention to withdraw at least six months before the effective date of such withdrawal. * * *
"9. The death or withdrawal of one or more partners shall not require a liquidation of the partnership but the partnership business shall be continued by the remaining partners under the same name as a continuing partnership subject to all the applicable terms and conditions of this agreement, or any amendments thereof or additions thereto, provided however, that if said Alley withdraws, his name shall not be used without his permission after six (6) months from *31 the day of his withdrawal. Any withdrawing partner or partners or the estate of any deceased partner or partners shall not be entitled to share in the profits of the continuing partnership and the partners of the continuing partnership shall indemnify and save harmless the withdrawing partner or partners or the estate of the deceased partner or partners from any and all acts and liabilities of the continuing partnership, provided however, that any retiring partner or partners shall continue to be liable for all debts, obligations or liabilities incurred by the partnership prior to any such withdrawal or death. "10. Upon the death or withdrawal of any partner such withdrawing partner, or the estate of any deceased partner, shall be entitled to such proportion of the value of the net assets of the business as the partner's actual contribution of capital bears to the aggregate capital contributed by all partners, provided however, that in computing the assets of the business for this purpose no value for goodwill shall be included and proper provisions shall be made for any outstanding or contingent liability. The share of a withdrawing partner shall be determined as of the day of withdrawal, *32 and shall be payable without interest, one-half within thirty (30) days and the balance within ninety (90) days from the day of withdrawal. The share of a deceased partner shall be determined as of the last business day of the calendar month in which he dies, and shall be payable without interest one-half within three (3) months and the balance within six (6) months of such day. His estate shall also be entitled to receive monthly for six (6) months a sum equal to the monthly advance payable to the deceased partner prior to his death." Ernest V. Alley was a senior partner in Alley & Richards Company during 1944 prior to his death, and his name had been used as a part of the agency's title since around 1926. Alley died October 15, 1944, and the partnership paid his estate the sum of $3,333.32 during the months of November and December, 1944, in accordance with the last sentence of paragraph 10 of the partnership agreement shown above. These payments made to the estate of E. V. Alley for the months of November and December were at the same monthly rate that was being made to E. V. Alley as advanced payments out of profits of the partnership during his lifetime. The books of Alley & Richards *33 Company for the month of November, 1944, showed partners' withdrawals, $12,361.06. This $12,361.06 included $1,666.66 paid to the estate of E. V. Alley. The books of Alley & Richards Company for the month of December, 1944, showed partners' withdrawals, $12,361.21. This $12,361.21 included the sum of $1,666.66 paid to the estate of E. V. Alley. The partnership return of Alley & Richards Company for the calendar year 1944 on Form 1065 showed gross income of $513,789.42. From this gross income, the following deductions were taken: (1) Salaries and wages
$156,711.39
(2) Rent
17,066.92
(3) Taxes
7,728.87
(4) Depreciation
1,151.38
(5) Other deductions
58,044.35
Total
$240,702.91 This resulted in a net income shown on the return of $273,086.51. Schedule I attached to the partnership return showed the following as "Partners' Shares of Income and Credits": Name
Amount
* Ernest V. Alley
$ 42,101.04
Courtland N. Smith
40,800.81
H. L. Whittemore
28,260.05
George W. B. Hartwell
27,081.52
Harold R. MacNamee
32,081.52
Harry M. Billerdeck
19,221.88
Deane H. Uptegrove
24,221.87
Joseph T. Coenen
7,874.08
Richard B. Reynolds
23,221.87
C. A. Holcomb
28,221.87
$273,086.51
The "Other deductions" mentioned *34 in (5) above were enumerated in Schedule F of the return, as follows: Advertising
$ 4,308.31
Incidentals
8,183.08
Insurance
221.80
Layout
2,829.31
Light
1,246.14
Postage
1,435.72
Soliciting
601.33
Stationery and printing
4,568.41
Subscriptions
4,137.10
Telephone and telegraph
5,565.20
Traveling
14,108.86
Unbillable expense
3,894.80
Estate of E. V. Alley
3,333.32
Unemployment insurance - New York
1,946.09
Unemployment insurance - Massachu-
setts
202.15
Unemployment insurance - Federal
337.53
Federal Social Security
1,125.20
Total
$58,044.35 In his determination of the deficiency respondent has increased the net income of the partnership by disallowing as a deduction the $3,333.32 shown in Schedule F of the return as having been paid to the estate of E. V. Alley. Respondent added to petitioner's 1944 income the sum of $770.83, or 23.125 per cent of $3,333.32. Petitioner's interest in the partnership after the death of E. V. Alley was 23.125 per cent. The addition of this amount of $770.83 resulted in the income tax deficiency of $528.71 determined by the respondent. Opinion BLACK, Judge: During the year 1944, petitioner was a partner in a partnership which conducted a general advertising business under the name of Alley *35 & Richards Company. Ernest V. Alley, a senior partner in Alley & Richards Company, died October 15, 1944, and the partnership which continued in business after his death paid the estate of E. V. Alley the sum of $3,333.32 during the months of November and December, 1944, as provided in the last sentence of paragraph 10 of the partnership agreement. That sentence reads: "His estate shall also be entitled to receive monthly for six (6) months a sum equal to the monthly advance payable to the deceased partner prior to his death." Respondent in his brief says: "The sole issue in this case is whether said payment was an ordinary and necessary business expense." In thus stating the issue, respondent does not correctly state it. We have no such issue before us. Petitioner is not contending that the $3,333.32 in question was incurred and paid by the partnership as an ordinary and necessary business expense. The substance of petitioner's contention, as stated in his assignment of error and pressed in his brief, is that the $3,333.32 payments made to the estate of E. V. Alley by the partnership in November and December, 1944, constituted income to the estate of E. V. Alley and should be excluded *36 from the income of the surviving partners who remained after Alley's death. Petitioner does not contend that these payments were ordinary and necessary expenses of the partnership. As a matter of fact, the partnership return of Alley & Richards Company is in evidence and shows that the partnership deducted salaries and wages in 1944 of $156,711.39 as an ordinary and necessary business expense. None of the advances made to the partners, including the $3,333.32 paid to the estate of E. V. Alley, are included in this total. The payments made to the estate of E. V. Alley in November and December, 1944, aggregating $3,333.32 were included in "Other deductions" shown on the return. We think petitioner's contention as to the nature of this $3,333.32 in question should be sustained. We think the facts of the instant case bring it within the ambit of Sidney Hess, 12 T.C. 773, and cases there cited. In that case the facts briefly were these: The taxpayer was a member of a partnership doing business as manufacturers' representatives. The partnership agreement provided that upon the death of one partner the other partner was obligated to make specified monthly payments contemplated to be made *37 out of income of the business to the widow of the deceased partner so long as she lived and the same type of business was conducted by the surviving partner. Upon the death of the other partner, taxpayer acquired the former's interest by payment of a lump sum to his estate pursuant to terms of the agreement. As he continued to conduct the same type of business, the taxpayer, Sidney Hess, made the monthly payments to the widow as required by the contract. On these facts we held that the monthly payments made by Hess to the widow of the deceased member of the partnership were excludable from the taxpayer's income. In so holding, we said: "* * * Under the agreement the surviving partner was to acquire the complete interest of the deceased partner upon the payment of a sum determined by an independent audit. This was done here and the probate court so recognized. Nothing remained of the interest of the deceased partner which petitioner could or did purchase by the payments to Mayer's widow. As the probate court further found, and we believe that it properly construed the agreement, the deceased's estate had no interest in these payments, and they were intended for the sole and exclusive *38 benefit of his widow and were an obligation of petitioner to the widow arising under the amended partnership agreement. By the modifications of the agreement, the partners intended something '* * * in the nature of a mutual insurance plan, the disadvantage of which each partner was willing to accept in consideration of a similar commitment for his benefit on the part of all other partners. * * *." Charles F. Coates, 7 T.C. 125, 134. "Under this view of the facts, we are of the opinion that the one litigated issue must be resolved in favor of petitioner upon the authority of such cases as Bull v. United States, 295 U.S. 247; Gussie K. Barth, 35 B.T.A. 546; Richard P. Hallowell, II, 39 B.T.A. 50; Charles F. Coates, supra; and Estate of Thomas F. Remington, 9 T.C. 99." In the instant case section 10 of the partnership agreement provided how a withdrawing or a deceased partner's interest should be acquired by the remaining partners. That provision reads: "10. Upon the death or withdrawal of any partner, such withdrawing partner, or the estate of any deceased partner, shall be entitled to such proportion of the value of the net assets of the business as the partner's actual contribution *39 of capital bears to the aggregate capital contributed by all partners, provided however, that in computing the assets of the business for this purpose no value for goodwill shall be included and proper provision shall be made for any outstanding or contingent liability. The share of a withdrawing partner shall be determined as of the day of withdrawal, and shall be payable without interest, one-half within thirty (30) days and the balance within ninety (90) days from the day of withdrawal. The share of a deceased partner shall be determined as of the last business day of the calendar month in which he dies, and shall be payable without interest one-half within three (3) months and the balance within six (6) months of such day. * * *" The Commissioner makes no contention that the method of acquiring the interest of a withdrawing or a deceased partner has not been complied with in the instant case. Whatever was paid to the estate of E. V. Alley for his interest in the partnership is not here involved. As we have already noted, the last sentence of article 10 of the partnership agreement provided that in addition to what was to be paid for a withdrawing or deceased partner's interest *40 in the partnership, the estate of a deceased partner should also be entitled to receive monthly for six months a sum equal to the monthly advance payable to the deceased partner prior to his death. We construe this provision simply to mean that upon the death of a partner his estate was to have the same monthly advance payments for a period of six months as the deceased partner would have had in his lifetime. Clearly, if E. V. Alley had lived these monthly advance payments to him out of profits of the partnership would have been taxable to him. We see no reason why such payments would not be equally taxable to his estate for they were of the same nature. If they are taxable to his estate, they certainly would not be taxable to the surviving partners. By this arrangement, as we said in the Hess case, supra: "the partners intended something '* * * in the nature of a mutual insurance plan, the disadvantage of which each partner was willing to accept in consideration of a similar commitment for his benefit on the part of all other partners, * * *'." Cf. Charles F. Coates, 7 T.C. 125, 134. On the authority of Sidney Hess, supra, and Charles F. Coates, supra, we decided the issue here *41 involved in favor of the petitioner. Decision will be entered for the petitioner. Footnotes
*. Deceased - October 15, 1944.↩