## HOME TRUST CO. et al. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 9420.

Circuit Court of Appeals, Eighth Circuit.

May 11, 1933.

Phil D. Morelock, of Kansas City, Mo. (Butler Disman, Perry W. Shrader, and Shouse, Doolittle, Morelock & Shrader, all of Kansas City, Mo., on the brief), for petitioners.

Helen R. Carloss, Sp. Asst. to Atty. Gen. (G. A. Youngquist, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and A. H. Fast, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for respondent.

Before STONE and KENYON, Circuit Judges, and REEVES, District Judge.

KENYON, Circuit Judge.

This is a petition for review of a decision of the Board of Tax Appeals entered May 29, 1931. The Home Trust Company and the Home Safe Deposit Company, petitioners, are affiliated companies, and filed consolidated returns for 1923 and 1924. The matter was dealt with by the Board as if only one petitioner were involved, and we shall follow for convenience that procedure. Only one question is in dispute, to wit: Whether $75,000 paid by the Home Trust Company in 1924 to secure immediate possession of a leasehold from a sublessee is an "ordinary and necessary" expense incurred in carrying on its business deductible from the gross income in that year, or whether it is an investment in a capital asset, subject to amortization over the life of the asset. 26 USCA § 986 (a) (1, 7). The case was presented to the Board of Tax Appeals upon a stipulation of facts, which discloses the following: The Home Trust Company is a Missouri banking corporation operating a bank in Kansas City, Mo. The Home Safe Deposit Company operates safe deposit vaults in the basement of the building where the bank is located. Its entire capital stock is owned by the Home Trust Company. In April, 1923, the Home Trust Company purchased the assets of the Central Exchange National Bank, which was conducting a banking business in Kansas City. The quarters of the Home Trust Company at that time were 1121 Walnut street, Kansas City, Mo. Neither of these properties was sufficient for the needs of the combined business, and banking quarters were secured by the acquisition of the use of the premises located at 1117 Walnut street in the following way: On April 29, 1919, W. B. Thayer and wife leased to one Herbert M. Woolf, these premises for a period of 99 years. It is unnecessary to set out the lease.

July 1, 1919, Woolf assigned said lease to the Columbia Realty Company, a Missouri corporation. That assignment need not be set forth.

June 27, 1919, the Columbia Realty Com-

pany leased these Walnut street premises to the Childs Company, a New York corporation, for a period of 20 years. That lease was before the Board.

February 18, 1924, the owners of the capital stock of the Columbia Realty Company, of which Woolf was one, sold to the Home Trust Company all the stock of the said Columbia Realty Company for a consideration of $105,000.

February 28, 1924, the Columbia Realty Company and the Childs Company entered into an agreement whereby for a consideration of $75,000 its lease was "merged and extinguished." The consideration of $75,000 was paid by the Home Trust Company directly to the Childs Company.

May 31, 1924, the Columbia Realty Company assigned the 99-year lease acquired from Woolf to the Home Trust Company. Shortly thereafter the Columbia Realty Company was dissolved by voluntary action of its stockholders. When the Childs Company lease was canceled, it removed from the premises, and the Home Trust Company after extensive alterations and improvements installed its banking business therein and commenced business at these new quarters in October, 1924, and has ever since occupied said premises for its business.

The Board of Tax Appeals held that the $75,000 paid by the Home Trust Company should be ratably amortized over the remaining years of the 99-year lease; that it could not be deducted from the gross income as an "ordinary and necessary" expense of the business for that year; that the effect of the several transfers was that "the Home Trust Company became the owner of the 99-year lease at a cost of $105,000, which it paid for all the stock of the Columbia Realty Company, plus $75,000, which, through the Columbia Company, it paid to the Childs Company for the cancellation of the 20-year lease."

The Board in its opinion stated that the parties agreed "that the amount of $105,000 should be regarded as a bonus which the petitioner paid to acquire the 99-year lease, and, that such payment is a capital expenditure amortizable ratably over the term of the lease remaining at date of such acquisition."

▆▆ The issue here is clear and reduced to narrow confines. The two payments of $105,000 and $75,000 respectively were each made for the same purpose; i. e., the securing of better quarters for carrying on the Home Trust Company banking business. The payments for the stock of the Columbia Realty Company and for cancellation of the lease were really part of the cost of acquiring possession of the property. It was one transaction. That a number of contracts may be involved to bring it about is unimportant, as courts look through form to substance. The real test is the character of the transaction, which in this case is not difficult to ascertain. It cannot be questioned that, when the Columbia Realty Company made the agreement for the cancellation of the sublease, the consideration being furnished by the Home Trust Company, such cancellation had been contemplated and agreed to at the time the stock of the Columbia Realty Company was purchased by the Home Trust Company. It could hardly be assumed that the Home Trust Company would have paid $105,000 to acquire a long-term lease under which it would not secure possession for twenty years. It, of course, knew that the cancellation of the Childs sublease could be secured. If it merely desired twenty years' possession, there would have been no necessity of paying $105,-000 for the long-term lease. Certainly these two transactions are to be treated as one for tax purposes, and petitioner concedes that the $105,000 paid for the stock of the Columbia Realty Company is to be treated as a capital expenditure, deductible over the life of the lease. That being conceded, there seems to be little basis for an argument that the $75,000 paid for the cancellation of the sublease with the same objective in view should be treated as an "ordinary and necessary" expense incurred during the taxable year in carrying on trade or business.

The proposition is clearly settled that an expenditure made to acquire an asset which is expected to be income-producing over a period of years is a capital expenditure, and a capital expenditure does not come under the term "ordinary and necessary" expense deductible from current income under section 234 (a) (1) of the Revenue Act of 1924, or the similar section in the Revenue Act of 1921 (42 Stat. 254).

We refer to some of the cases where the expenditures were held not to be "ordinary and necessary" expenses deductible from the gross income for the year in which paid, but capital expenditures:

Duffy, Collector of Internal Revenue, v. Central R. R. Co. of New Jersey, 268 U. S. 55, 45 S. Ct. 429, 69 L. Ed. 846 (expenditures by lessee under long-term lease for additions and betterments to property).

Great Northern Ry. Co. v. Commissioner of Internal Revenue (C. C. A. 8) 40 F.(2d)

372 (cost of transporting workmen and materials for betterments and additions).

Colony Coal & Coke Corporation v. Commissioner of Internal Revenue (C. C. A. 4) 52 F.(2d) 923 (payments by coal companies to railroad for building branch line to their properties).

Corning Glass Works v. Lucas, Commissioner of Internal Revenue, 59 App. D. C. 168, 37 F.(2d) 798, 68 A. L. R. 736 (banker's commission for financing sale of stock of corporate taxpayer).

Simmons Company v. Commissioner of Internal Revenue (C. C. A. 1) 33 F.(2d) 75 (same).

The Treasury Department has for years had a regulation (article 110, Treasury Regulation 65) providing that: "Where a leasehold is acquired for business purposes for a specified sum, the purchaser may take as a deduction in his return an aliquot part of such sum each year, based on the number of years the lease has to run."

The courts have quite unanimously upheld the Treasury Department's rule that amounts paid to secure long-term leases constitute a capital expenditure not deductible as a business expense, but deductible by prorating over the life of the lease.

Anahma Realty Corporation v. Commissioner of Internal Revenue (C. C. A. 2) 42 F.(2d) 128, where buildings were demolished and new buildings erected by lessee. The court said (page 130 of 42 F.(2d): "The removal of the buildings was a part of the cost of acquiring the lease, and with it came the obligation of the tenant to pay the rent. The cost of acquiring an asset cannot be regarded as deductible as a loss or business expense for the year in which it is paid or incurred."

Bonwit Teller & Co. v. Commissioner of Internal Revenue (C. C. A. 2) 53 F.(2d) 381, 82 A. L. R. 325, where it was held that "fee paid broker for negotiating lease on taxpayer's behalf as lessor was investment of capital, and not business expense." This case clearly overrules Daly v. Anderson (D. C. N. Y.) 37 F.(2d) 728, which holds that a payment by lessor of a commission to a real estate broker for procuring the lease is not a capital expenditure.

Young v. Commissioner of Internal Revenue (C. C. A. 9) 59 F.(2d) 691, where landowners found it advantageous to demolish substantial buildings to obtain a 99-year lease obligating lessee to erect new buildings it was held that the value of buildings demolished, with the real estate commission paid,

attorney fees, certificate of title, etc., represented expenses of obtaining long-term lease, and were not immediately deductible for income tax purposes, but were properly amortized over the lease term.

Tonningsen et al. v. Commissioner of Internal Revenue (C. C. A. 9) 61 F.(2d) 199, where an amount paid as commission for effecting 99-year lease was held to be a capital expenditure to be deducted ratably over the term of the lease for income tax purposes.

Atwell v. United States (Ct. Cl.) 1 F. Supp. 720, a commission paid to a broker for obtaining a 99-year lease on business property was held not deductible as ordinary and necessary operating expense, but constituted "capital expenditure" required to be prorated over term of lease.

In King Amusement Co. v. Commissioner of Internal Revenue (C. C. A. 6) 44 F. (2d) 709, 710, the court discusses expense incurred by lessee in acquisition of leasehold where the amusement company was required to pay two guarantors a fee of $25,000 each to make sure the payment of rent under a lease. It was held that these fees were capital investment and not expense deductible from income. As this bears somewhat closely on the case at bar, we quote from the court's opinion: "In the case at bar, the petitioner desired to lease the property at a stipulated annual rental agreed upon with the owner. The owner would not make the lease except upon a guaranty of the payment of the rent, and it became necessary for petitioner to pay Finsterwald and King $50,000 to become guarantors. This was neither an 'ordinary and necessary expense' nor compensation 'for personal services' in carrying on the business, but was an expenditure for an asset which the petitioner could not utilize for nearly five years. It is true that the payment added nothing to the 'value of the lease' or 'the rental value of the property.' It was none the less an expenditure which it was necessary for petitioner to make to acquire property—a leasehold to use in its business in the future. In our opinion it was a capital investment, subject to annual allowances for exhaustion during the period of the lease. We find nothing in Lucas, Commissioner v. Ox Fibre Brush Co., 281 U. S. 115, 50 S. Ct. 273, 74 L. Ed. 733, that militates against this view." See, also, Central Bank Block Ass'n v. Commissioner of Internal Revenue (C. C. A. 5) 57 F.(2d) 5.

There are early decisions by the Board of Tax Appeals to the effect that the cost to the lessor of securing a lease is deductible from

the gross income of the year when paid. Robert H. McNeill v. Commissioner of Internal Revenue, 16 B. T. A. 479. This case has been squarely overruled in Bonwit Teller, Petitioner, v. Commissioner of Internal Revenue, 17 B. T. A. 1019, in Julia Stow Lovejoy, Petitioner, v. Commissioner of Internal Revenue, Respondent, 18 B. T. A. 1179, and in James M. Butler v. Commissioner of Internal Revenue, 19 B. T. A. 718.

In Chas. N. Manning et al. v. Commissioner, 7 B. T. A. 286, the holding was that: "The unextinguished cost of buildings removed in order to obtain a 99-year lease upon the land represented the cost to the lessor of such lease and should be exhausted over the terms of the lease."

Petitioner relies upon two decisions of the Board of Tax Appeals in which they assert the facts are akin to those of the case at bar, viz., Higginbotham-Bailey-Logan Co. v. Commissioner of Internal Revenue, 8 B. T. A. 566, and Olinger Mortuary Association v. Commissioner of Internal Revenue (Imperial Investment Co. v. Commissioner of Internal Revenue), 23 B. T. A. 1282. In the former case petitioner sought to deduct from gross income an item of $15,000, which it had paid for the cancellation of a lease previously executed on property that it already owned. The Commissioner had disallowed the deduction. The Board said, at page 577 of 8 B. T. A.: "The petitioner owned the fee of the building. It had given the lease and wished to terminate it. The cancellation of the lease did no more than give to the petitioner the possession of the property which it had leased. It created no greater title than it had previously owned. It created no new estate and no asset value which is exhaustible. * * * Here the payment served only to secure to petitioner what it previously had, namely, possession of its property." Whether this determination be correct or not, in light of court decisions hitherto cited, as to

which we express no opinion, the Board expressly distinguished the situation now before us when it said, in the part omitted from the above quotation: "This situation is to be distinguished from those where a fee is purchased subject to a lease and the lease subsequently purchased, or where payment is made to secure a lease of property owned by another."

Since the same considerations would apply to the purchase of a leasehold interest subject to a sublease as apply to the purchase of a fee subject to a lease, the present case falls within both of the situations thus distinguished. It was thus unnecessary for the Board of Tax Appeals in the present case to distinguish its decision in the Higginbotham-Bailey-Logan Case on the ground that there a merger occurred between the fee and the leasehold, even assuming this also to be a valid ground of distinction.

The decision of the Board in Olinger Mortuary Association v. Commissioner of Internal Revenue, 23 B. T. A. 1282, applied the rule of the Higginbotham-Bailey-Logan Case to a payment by the petitioner to secure the release of stock as collateral for a previous loan, in order to use it in obtaining a new loan; and adds nothing to the former decision that can in any way aid petitioners. These two decisions of the Board are the sole authorities cited by petitioners in support of their contention that the $75,000 was an "ordinary and necessary" expense, and not a part of the cost of acquiring the 99-year leasehold interest.

In the light of the many decisions of the Board of Tax Appeals and of the courts, these two decisions are weak authority for the position of petitioners.

We are satisfied the decision of the Board of Tax Appeals was right. The petition to review its determination should be dismissed. It is so ordered.

Dismissed.