ESTATE OF THOMAS F. REMINGTON, ELIZABETH M. REMINGTON, EXECUTRIX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 10169. Promulgated July 23, 1947.

*J. Hampden Dougherty, Esq.,* for the petitioner.
*Fred R. Tansill, Esq.,* for the respondent.

104

OPINION.

OPPER, *Judge*: Section 134 of the 1942 Act, reflected in Internal Revenue Code, section 126,[1] appears to be pertinent here. Upon the return filed for the period in question petitioner, in order to qualify under the new law, gave the required "full consent" to make the amendments retroactively applicable. Under these provisions the character of receipts by the estate is to be determined by what they would have been in the hands of decedent. If the payments of a portion of the commissions on insurance had been made to decedent, they could have been nothing but income. Indeed, there is no suggestion that while

---

[1] SEC. 126. INCOME IN RESPECT OF DECEDENTS.

(a) INCLUSION IN GROSS INCOME.—

(1) GENERAL RULE.—The amount of all items of gross income in respect of a decedent which are not properly includible in respect of the taxable period in which falls the date of his death or a prior period shall be included in the gross income, for the taxable year when received, of:

(A) the estate of the decedent, if the right to receive the amount is acquired by the decedent's estate from the decedent;

(B) the person who, by reason of the death of the decedent, acquires the right to receive the amount, if the right to receive the amount is not acquired by the decedent's estate from the decedent; or

(C) the person who acquires from the decedent the right to receive the amount by bequest, devise, or inheritance, if the amount is received after a distribution by the decedent's estate of such right.

\* \* \* \* \* \* \*

(3) CHARACTER OF INCOME DETERMINED BY REFERENCE TO DECEDENT.—The right, described in paragraph (1), to receive an amount shall be treated, in the hands of the estate of the decedent or any person who acquired such right by reason of the death of the decedent, or by bequest, devise, or inheritance from the decedent, as if it had been acquired by the estate of such person in the transaction by which the decedent acquired such right; and the amount includible in gross income under paragraph (1) or (2) shall be considered in the hands of the estate or such person to have the character which it would have had in the hands of the decedent if the decedent had lived and received such amount.

decedent lived, and after he had severed his connection with Brown Crosby, the commissions would have constituted anything but income to him. Such a view of the case could be dispositive of it.

But if it be thought that the 1942 amendments, which the parties do not discuss, are inapplicable for any reason, we must conclude that the receipts constituted ordinary income in any event.

Petitioner's position that the receipts were exempt as property received by devise or inheritance can not be sustained. The question is not what character a capital asset assumes in the hands of decedent's legatees. See *Helvering* v. *Enright*, 312 U. S. 636. Nor can they be treated as payments on account of the sale of a capital asset, since there was no capital asset to dispose of. See *Bull* v. *United States*, 295 U. S. 247. In the latter case the provision was that in the event a partner died the survivors should continue the business for one year, and the survivors' estate should "receive the same interest, or participate in the losses to the same extent" as the deceased would if living, "based on the usual method of ascertaining what the said profits or losses would be." The enterprise required no capital and none was contributed; it was stated that, except for a share in profits to the date of his death, decedent "had no other accumulated profits and no interest in any tangible property belonging to the firm." The Supreme Court held that the payments of the partnership income earned after the death of the deceased partner were income to the estate. In considering whether the payment of income earned after the death of the partner was consideration for the purchase by the survivors of the decedent's interest in the partnership, the Court said:

* * * Where the effect of the contract is that the deceased partner's estate shall leave his interest in the business and the surviving partners shall acquire it by payments to the estate, the transaction is a sale, and payments made to the estate are for the account of the survivors. It results that the surviving partners are taxable upon firm profits and the estate is not. Here, however, the survivors have purchased nothing belonging to the decedent, who had made no investment in the business and owned no tangible property connected with it. The portion of the profits paid his estate was therefore income and not corpus; and this is so whether we consider the executor a member of the old firm for the remainder of the year, or hold that the estate became a partner in a new association formed upon the decedent's demise.

\* \* \* \* \* \* \*

Since the firm was a personal service concern and no tangible property was involved in its transactions, if it had not been for the terms of the agreement, no accounting would have ever been made upon Bull's death for anything other than his share of profits accrued to the date of his death * * * and this would have been the only amount to be included in his estate in connection with his membership in the firm. * * *

The case at bar is substantially similar, and in our view governed by the *Bull* case. Decedent had no investment in the business, and the payments to petitioner were payments of income. If the mere

transfer from decedent to his estate at death were sufficient to create a basis for the value of his business, the same would have been true in the *Bull* case. As the Supreme Court observes in *Bull*:

* * * Had he lived, his share of profits would have been income. By the terms of the agreement his estate was to sustain precisely the same status quoad the firm as he had, in respect of profits and losses. Since the partners contributed no capital and owned no tangible property connected with the business, there is no justification for characterizing the right of a living partner to his share of earnings as part of his capital; and if the right was not capital to him, it could not be such to his estate. Let us suppose Bull had, while living, assigned his interest in the firm, with his partners' consent, to a third person for a valuable consideration, and in making return of income had valued or capitalized the right to profits which he had thus sold, had deducted such valuation from the consideration received, and returned the difference only as gain. We think the Commissioner would rightly have insisted that the entire amount received was income.

In both the *Bull* case and the case at bar, the future income was contingent in the sense that it had not been actually received, but the same can be said of many anticipatory assignments of income. Cf. *Lucas* v. *Earl*, 281 U. S. 111, and *Helvering* v. *Eubank*, 311 U. S. 122.

A consideration of the letters relied upon by petitioner does not lead to a contrary result. The letter from Brown Crosby of October 14, 1941, to decedent before his death is clearly no attempt to dispose of the business by sale or any other means; it is an arrangement looking to the division of income, including the division to be made after decedent's death, and is strikingly comparable to the agreement in the *Bull* case. The arrangement set forth in petitioner's letter of January 17, 1942, to Brown Crosby, confirmed by them, is of similar import, except that it is couched in terms of "purchase" and "sale." Whether this is satisfactory to meet the asserted restriction of New York law relating to the splitting of commissions with parties not holding brokerage licenses, we are not called upon to decide. We are, however, convinced that it can not serve to transform an item of income into any other type of receipt. See *Irwin* v. *Gavit*, 268 U. S. 161. Disposition of an issue of Federal tax law can not be dependent upon such circumstance. See *Estate of Mildred K. Hyde*, 42 B. T. A. 738, 746. Any attempted disposition would have been nothing more than an ineffectual assignment of future income. *Helvering* v. *Eubank, supra;* cf. *Louis Karsch*, 8 T. C. 1327.

If the commissions were not wholly earned by decedent's efforts prior to his death, the most that can be said is that the payments were made under agreements not to compete, by decedent himself as to the Statler business [2] and by petitioner as to the balance, there being

---

[2] As suggested in petitioner's brief: "It seems probable that if Mr. Remington had tried to take away the Statler account he would have failed; but, he had the right to try, and abstention from trying was legal consideration for Brown Crosby's promises * * *."

some reference in the record [3] to the executrix's abandonment of any purpose to develop her temporary broker's license into a permanent one upon concluding her agreement with Brown Crosby. Agreements not to compete give rise only to ordinary income. *Estate of Mildred K. Hyde, supra.*

*Estate of George R. Nutter,* 46 B. T. A. 35; affirmed *sub nom. McClennen* v. *Commissioner* (C. C. A., 1st Cir.), 131 Fed. (2d) 165, the principal authority relied upon by petitioner, is an estate tax case, and is further distinguishable here upon the similar grounds used to distinguish it in *Charles F. Coates,* 7 T. C. 125. As in *Coates,* we do not have here any interest in a business possessed of tangible assets which would permit us to regard such an interest as a capital asset. And in that case it was recognized that an estate might be taxable on a right to receive income, acquired as part of the estate, and then on that income when received. See *Bull* v. *United States, supra; Enright* v. *United States, supra,* footnote 9. And we have previously indicated our view that petitioner's letter of January 17, 1942, did not evidence any real intent to sell the business.

Petitioner's efforts to distinguish the kind of insurance dealt with here from life insurance do not persuade us that decedent's personal services were any less accountable for this income. Having brought the client to his employer, he was undoubtedly entitled to any renewal commissions on that business, notwithstanding that, unlike life insurance, the renewals would constitute new policies. Any payments received, by him or his estate, and however long delayed, were the fruits of his efforts and nothing else.

*Estate of F. S. Bell,* 46 B. T. A 484; reversed (C. C. A., 8th Cir.), 137 Fed. (2d) 454, and *Beulah Eaton McAllister,* 5 T. C. 714; reversed (C. C. A., 2d Cir.), 157 Fed. (2d) 235; certiorari denied, 330 U. S. 826, are inapplicable. They represent in fact the converse of the present situation. There, no one questioned that receipts by the original life tenant would have been ordinary income when received. It was only because there was a "sale" of the right to receive such future payments that the controversy arose. Here, the right to receive the payments in question was never disposed of. The payments would have been income to decedent had he lived, and hence retain the character of income after his death. *Bull* v. *United States, supra; Helvering* v. *Enright, supra.* What was income to begin with was never converted into capital by a lump sum disposition as in *McAllister, supra,* and *Bell, supra.*

*Decision will be entered for the respondent.*

---

[3] See findings of fact, last two paragraphs.