SIDNEY HESS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 17039.  Promulgated May 13, 1949.

*Sidney J. Hess, Jr., Esq.*, for the petitioner.
*A. H. Moorman, Esq.*, for the respondent.

776

778

Kern, *Judge*: Whether the payments made by petitioner to the widow of his deceased partner are excludable or deductible from his gross income depends primarily upon the terms of the partnership agreement, as amended. In determining the scope and effect of that agreement, respondent recognizes that we are "entitled to know of all the circumstances surrounding and motivating the parties to enter into an agreement." In our attempt to ascertain the intention of the parties, as embodied in the agreement, which is in many vital respects ambiguous, we are also permitted to consider the parol testimony offered on behalf of petitioner. 20 Am. Jur., Evidence, par. 1155; *Charles F. Mitchell*, 45 B. T. A. 300; and *Combs Lumber Co.*, 41 B. T. A. 339. See also *Macon, Dublin & Savannah R. R. Co.*, 40 B. T. A. 1266, and *Haverty Realty & Investment Co.*, 3 T. C. 161. Respondent's motion to strike such testimony is accordingly denied.

As we conceive what the partners intended and what they sought to embody in their agreement, there was to be a profit-sharing arrangement whereby the widow of the partner who died first would be entitled, as a third party beneficiary under the contract, to certain stipulated monthly amounts out of the income of the business continued by the survivor. These payments were to continue for as long as the widow lived, or as long as the same type of business was conducted by the survivor. These payments were not intended as gratuities, and neither petitioner nor respondent so urges. Nor were they intended to be part payment for the purchase of the interest of the deceased partner. And that they were not in fact such payments can

be garnered from the agreement itself, as well as from the surrounding circumstances and the events subsequent to the death of Mayer.

Respondent's position, we believe, would not have been taken if it were not for the confusing language of the agreement that the payments were for the use of the trade name, whether it was used or not. However, no substantial meaning can be attributed to this provision in light of the agreement as a whole, the purposes sought to be accomplished, and the explanation of the ambiguity by petitioner. Under the agreement the surviving partner was to acquire the complete interest of the deceased partner[1] upon the payment of a sum determined by an independent audit. This was done here and the probate court so recognized. Nothing remained of the interest of the deceased partner which petitioner could or did purchase by the payments to Mayer's widow. As the probate court further found, and we believe that it properly construed the agreement, the deceased's estate had no interest in these payments, and they were intended for the sole and exclusive benefit of his widow and were an obligation of petitioner to the widow arising under the amended partnership agreement. By the modifications of the agreement, the partners intended something "* * * in the nature of a mutual insurance plan, the disadvantage of which each partner was willing to accept in consideration of a similar commitment for his benefit on the part of all other partners, * * *." *Charles F. Coates,* 7 T. C. 125, 134.

Under this view of the facts, we are of the opinion that the one litigated issue must be resolved in favor of petitioner upon the authority of such cases as *Bull* v. *United States,* 295 U. S. 247; *Gussie K. Barth,* 35 B. T. A. 546; *Richard P. Hallowell, II,* 39 B. T. A. 50; *Charles F. Coates, supra;* and *Estate of Thomas F. Remington,* 9 T. C. 99.

Because we believe that the payments are excludable from petitioner's gross income, we need not consider the alternative contention that they are deductible therefrom.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

———

DISNEY, *J.,* dissenting: The original paragraph 16 of the partnership agreement provided for acquisition of a deceased partner's interest by the survivor. That paragraph was amended about August 18, 1941, the new paragraph referring to the partnership assets to be acquired by the survivor pursuant to the agreement and the amendment. Then provision was made for payments by the survivor to the wife of a deceased or mentally incapacitated partner, and for

---

[1] Only nominal good will, as we have found, attached to the name and the business. *D. K. MacDonald,* 3 T. C. 720.

acquisition by the survivor of the right to use the partnership name. This appears to me to be a capital transaction, the payments to the wife being an integral part of the consideration for passage of title to the partnership assets to the survivor. I would not exclude such payments from petitioner's income. I therefore respectfully dissent.

TURNER and MURDOCK, *JJ.*, agree with this dissent.