STEWART TITLE GUARANTY COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

STEWART TITLE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 38028, 38056. Promulgated June 18, 1953.

*W. Carloss Morris, Jr., Esq.*, and *Robert H. McCanne, Esq.*, for the petitioners.

*Joseph P. Crowe, Esq.*, for the respondent.

632

OPINION.

JOHNSON, *Judge:* Petitioners contend that the losses resulting from the sale of the abstract plants are ordinary losses and deductible in full because the abstract plants are excluded from the term "capital assets" by section 117 (a) (1) (B) of the Code. This section provides that property used in a trade or business of a character subject to the allowance for depreciation provided for in section 23 (l) is not a capital asset. Section 23 (l) provides a deduction for "A reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)" of property used in the trade or business. Petitioners urge that even though the abstract plants might not be subject to depreciation they were subject to obsolescence and hence come within the meaning of the Code.

In opposition respondent maintains that the abstract plants are not property used in a trade or business of a character subject to depreciation under section 23 (l), and therefore must be deemed to be capital assets under section 117.

There is no doubt that an abstract plant is subject to obsolescence. *Crooks* v. *Kansas City Title & Trust Co.*, 46 F. 2d 928; see I. T. 1775, II–2 C. B. 145, and also *Real Estate-Land Title & Trust Co.* v. *United States*, 309 U. S. 13. However, an additional requirement for property to be excluded from the definition of capital assets is that the property must not be used in petitioners' trade or business. The evidence indicates that the Texas Title plant was stored from 1932 to 1946. We have unimpeached testimony that the "so-called abstract plant, which are the cards and books" was not used in the conduct of the Stewart Guaranty business. From the evidence as to the Texas

Title plant we can only conclude that it was stored as surplus and was not used in Stewart Guaranty's trade or business. The fact that take-off cards were provided for the plant during the years that it was stored does not indicate that the plant was used in the business. The take-off cards were not filed but were merely tied together and stacked. This is almost conclusive evidence that the Texas Title plant was not used in the business.

On the other hand, when we consider that the Green Company plant was used by Stewart Title until it was sold, we can only conclude that it was used in Stewart Title's trade or business.

Since the Texas Title plant was not used in Stewart Guaranty's trade or business it is a capital asset; however, since the Green Company plant was used in Stewart Title's business it is not a capital asset. Section 117 (a) (1) (B).

While we are of the opinion that these plants are subject to obsolescence, we are unable to find from the record facts which would sustain an adjustment for obsolescence. Respondent points out, in the alternative, if the plants were subject to obsolescence, that obsolescence began to affect the value of petitioners' abstract plants as early as 1937 with the advent of the increased use of title insurance. In general such a statement might be true, but here we have no way of knowing if petitioners' plants were adversely affected. We have no evidence from either party as to the actual amount of obsolescence, the time it began, or its duration.

In petitioners' argument for obsolescence, it is urged that a technological change, the introduction of IBM bookkeeping equipment, resulted in plant obsolescence. The evidence is that this equipment was first used on May 1, 1945, in California. It was only 8 months later that the Texas Title plant was sold, and 11 months later the Green Company plant was sold. The use of this new equipment was so limited during these few months that the functional depreciation did not create a diminution in the value of petitioners' plants. See *Real Estate-Land Title & Trust Co.* v. *United States, supra.* In fact, petitioners did not claim any depreciation or obsolescence for these plants on their income tax returns.

When Stewart Guaranty reported its loss for income tax purposes from the sale of the Texas Title plant it excluded from the consideration received the reasonable value of Rattikin's agreement to supply take-off cards to petitioner for 5 years. Rattikin's agreement to supply take-off cards was as much a part of the consideration paid for the Texas Title plant as the note for $17,500. The parties have stipulated that the cost to supply the take-off cards was $200 per month. This monthly service, extended for the 5-year term of the contract, would have an aggregate value of $12,000, and it is proper to add this

amount to the $17,500 note to arrive at the total consideration given and received for the Texas Title plant. This total consideration is to be used in ascertaining the loss from the transaction.

Since we have found that Rattikin's services, reasonably valued at $12,000, were part of the consideration received by Stewart Guaranty in exchange for the Texas Title plant, we must consider one of Stewart Guaranty's alternate pleas. In the alternative, Stewart Guaranty contends that it is entitled to an "additional expense of operation," either for 1 year in the amount of $12,000, or $2,400 per year for 5 years. Respondent's answer denies the alternative plea in the petition but he made no argument to this plea on brief.

Looking at the transaction from Stewart Guaranty's standpoint, it sold part of the Texas Title plant to Rattikin in exchange for Rattikin's promise to supply it with take-off cards for 5 years. Stewart Guaranty received in exchange for part of its plant a contract which would entitle it to an aggregate of $12,000 worth of services for a 5-year period. By this transaction it acquired an asset worth $12,000, but an asset which would be worthless after 5 years of service.

If, in a hypothetical transaction, Stewart Guaranty sold its Texas Title plant for $29,500 in cash and by a subsequent contract agreed to pay Rattikin at a rate of $2,400 per year for 5 years for his work in supplying take-off cards for its other plant, the question of Stewart Guaranty's right to deduct $2,400 per year for the operation and maintenance of its plant would probably never arise. See O. D. 1018, 5 C. B. 119. We can not see, looking at the facts before us, how Stewart Guaranty's exchange of property, its abstract plant, for a contract for services, differs materially from our hypothetical exchange of cash for a service contract.

The question of whether a contract is subject to depreciation is not new or novel; both the courts and the Commissioner have considered this question many times.

In such a case where there is an asset or a contract which has a life extending beyond the taxable year and which depreciates over a period of years, the courts have permitted the taxpayer to depreciate the asset or the contract over its life. Examples of this are as follows: Advance rentals, *Baton Coal Co.* v. *Commissioner*, 51 F. 2d 469; *Main & McKinney Bldg. Co.* v. *Commissioner*, 113 F. 2d 81; payments of bonuses for acquisition and cancellation of leases, *Home Trust Co.* v. *Commissioner*, 65 F. 2d 532; *Steele-Wedeles Co.*, 30 B. T. A. 841; commissions for negotiating leases, *Bonwit Teller & Co.* v. *Commissioner*, 53 F. 2d 381; exhaustion of patents, *Associated Patentees, Inc.*, 4 T. C. 979; exhaustion of a license permitting the taxpayer to remove sand and gravel, *Lewis E. Smoot*, 25 B. T. A. 1038; amount paid for right to operate a traction company for 28

years, *Boston Elevated Railway Co.*, 16 T. C. 1084, 1114; affd. 196 F. 2d 923; exhaustion of a leasehold, *Powell Coal Co.*, 12 B. T. A. 492; agreements not to compete, *B. T. Babbitt, Inc.*, 32 B. T. A. 693, and leasehold improvements by a lessee, *Lamson Bldg. Co.* v. *Commissioner*, 141 F. 2d 408.

Information as to the Commissioner's approach to this problem is contained in Internal Revenue Bulletin "F", revised January 1942. On page 88 the following information is provided:

Contracts.—A contract, under certain circumstances, may be the subject of a depreciation allowance; that is, the cost or other basis of the contract under certain conditions may be amortized ratably over the life thereof and such a proportionate part of its cost or other basis deducted for each taxable year during the life of the contract. * * * No allowance can be made for contracts having an indefinite or perpetual life, such as agency contracts for an indefinite period. * * *

It can be said from all of the above that an expenditure made in acquiring a capital asset or a contract which is expected to be income-producing over a series of years is in the nature of a capital expenditure which must be amortized ratably over the life of the asset or the period of the contract.

Stewart Guaranty's contract had value, and it helped produce income. The contract was subject to exhaustion, in fact to complete exhaustion, in 5 years. It is proper that Stewart Guaranty amortize, over the life of the contract, the amount annually lost through exhaustion, and it will be permitted so to do. This annual deduction would be $2,400.

*Decisions will be entered under Rule 50.*