FRANCES E. LATENDRESSE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 38986. Filed May 25, 1956.

*C. Severin Buschmann, Jr., Esq.*, and *William A. Krieg, Esq.*, for the petitioner.

*John L. Carey, Esq.*, for the respondent.

324

OPINION.

Murdock, *Judge:* Frances' position appears [3] to be that the gross receipts here in question were not income in respect of a decedent, within the meaning of section 126, but constituted return of a section

[3] This and similar expressions herein are used advisedly due to difficulty in ascertaining petitioner's position from the briefs presented.

113 (a) (5) basis and therefore did not result in taxable income to her in the years in question. This contention is apparently predicated on the theory that the contingent renewal commissions were attributable primarily to "a continuing capital investment" rather than "past services rendered" by the decedent.

We do not agree with her premise that Frank's only connection with the insurance agencies out of which the renewal commissions arose was one of investment. He was named general agent in each of the three contracts referred to in our findings as the A Agency, B Agency, and C Agency. His duties enumerated therein were to procure agents (who would be his employees and not those of Standard), to solicit applications for insurance (personally or by agent), to collect and remit premiums to Standard, and to make reports to the home office. Frank alone was responsible to Standard for such performance although in each instance Flagg or Brown was employed to assist in the performance of the contract. The rights to the contingent renewal commissions on insurance sold prior to his death, under the A Agency contract subsequent to February 28, 1939, the B Agency contract subsequent to May 11, 1940, and under the C Agency contract, clearly resulted from personal services rendered by Frank. It is immaterial whether he engaged in other business activities.

Section 126 (a) (1) provides that "The amount of all items of gross income in respect of a decedent which are not properly includible in respect of the taxable period in which falls the date of his death or a prior period shall be included in the gross income, for the taxable year when received, of: "* * * (C) the person who acquires from the decedent the right to receive the amount by bequest, devise, or inheritance, if the amount is received after a distribution by the decedent's estate of such right." The renewal commissions involved herein, being contingent upon payment at a future date by the insured persons, had not become payable and clearly were not properly includible in respect of the taxable period in which fell the date of decedent's death or a prior period. Section 126 (a) (3) provides that "The right, described in paragraph (1), to receive an amount shall be treated, in the hands of * * * any person who acquired such right by reason of the death of the decedent, or by bequest, devise, or inheritance from the decedent, as if it had been acquired by * * * such person in the transaction by which the decedent acquired such right; and the amount includible in gross income under paragraph (1) or (2) shall be considered in the hands of * * * such person to have the character which it would have had in the hands of the decedent if the decedent had lived and received such amount."

Had the renewal commissions on the insurance written while he was general agent under the three agency contracts mentioned above (not

including the portions to which Flagg and Brown were entitled) been paid to Frank while he lived, they would unquestionably have been taxable to him under section 22 (a) of the Internal Revenue Code of 1939. We do not understand Frances to contend otherwise. Accordingly, we hold that those commissions are taxable to her as ordinary income, in the year of receipt, under section 126 (a) of the Internal Revenue Code of 1939. *Estate of Thomas F. Remington*, 9 T. C. 99. See also *Estate of Edgar V. O'Daniel*, 10 T. C. 631, affd. 173 F. 2d 966.

"Since section 126 provides for the treatment of such amounts as income to the estate and other persons placed in the same position as the decedent with respect to such amounts, the provisions of section 113 (a) (5) with respect to the basis of property acquired by bequest, devise, or inheritance do not apply to those amounts in the hands of the estate and such persons." Sec. 29.126-1, Regs. 111. See also H. Rept. No. 2333, 77th Cong., 2d Sess. (1942), pp. 83–84; S. Rept. No. 1631, 77th Cong., 2d Sess. (1942), pp. 100–101.

Frank, by contract dated April 22, 1940 (referred to as the A Agency Renewal Contract), purchased from Wyatt the latter's interest in the contingent renewal commissions retained by Wyatt in 1939, in excess of the amounts necessary to satisfy the several obligations for which such contingent sums had been impressed with a trust. Those commissions related to insurance policies sold prior to February 28, 1939, the date on which Frank was substituted as general agent for Standard, and as to which all necessary services incident to the earning of such commissions had been performed by Wyatt and his employees. Renewal insurance commissions received by reason of bona fide assignments for value from various insurance agents who had written the policies to which the renewal commissions related constitute ordinary income taxable to the assignee to the extent which the aggregate amount thereof exceeded the total consideration paid by him for such assignments. *Lewis N. Cotlow*, 22 T. C. 1019, affd. 228 F. 2d. 186 (C. A. 2).[4] Had Frank received any renewal commissions pursuant to the A Agency Renewal Contract during his lifetime, such proceeds would have constituted ordinary income taxable to him in the year received. Such renewal commissions, being contingent upon payment at a future date by the insured persons, were not payable and were not properly includible in respect of the taxable period in which fell the date of decedent's death or a prior period. Accordingly, they constitute ordinary income taxable to Frances in the year of receipt, under section 126 (a) of the Internal Revenue Code of 1939. *Estate of Thomas F. Remington, supra.*

---

[4] In the *Cotlow* case only the amount of renewal commissions which exceeded the consideration paid therefor was involved, such consideration having been recovered out of prior receipts.

The same situation applies to the interest of Flagg in the contingent renewal commissions which arose out of insurance policies sold under the B Agency Contract purchased by Frank from Flagg by contract dated December 31, 1941, as well as to any portion of the proceeds which may be attributable to the 24 per cent interest which Frank had in the commissions arising out of insurance policies sold under the B Agency Contract from May 31, 1939, to May 11, 1940. The evidence presented indicates no cost basis as to the latter interest. The proceeds here involved, to the extent they arose out of such interests, constitute ordinary income taxable to Frances in the year of receipt, under section 126 (a). *Lewis N. Cotlow*, and *Estate of Thomas F. Remington*, both *supra.*

The next question is the extent, if any, to which Frances is entitled to deductions on account of the cost to Frank of the interests acquired by him under the various contracts involved. It does not appear that Frances is claiming any deduction on account of cost as to decedent's interests in the B and C Agency contracts and none is indicated by the facts presented. Consideration is limited to the amount, if any, to which Frances is entitled in connection with the A Agency Contract, the A Agency Renewal Contract, and Flagg's interest in the B Agency Contract.

There can be no doubt that at the time of Frank's death there were unrecovered costs of $8,174.43 in connection with the A Agency Contract, $12,500 in connection with the A Agency Renewal Contract, and $3,774.32 in connection with the Flagg interest in the B Agency Contract. All of these contracts appear to have yielded income in the years after Frank's death. Such cost properly can be recovered out of income to be received for limited periods which are ascertainable in length. We noted in the somewhat similar situation in *James F. Oates*, 18 T. C. 570, that the length of time for which comparable commissions would be paid is actuarially ascertainable, and we said:

As long as the general agents remained in active business the level of these commissions from year to year remained fairly constant. This was because new business written by the general agency would fairly take the place of old business which might not be renewed, or where death intervened, of course, the premiums would stop. However, when these general agents reached the retirement age and new business stopped coming in to them, the bulk of their renewal commissions would be collected in the first five years after retirement and along about the ninth year the collections would dwindle off to practically nothing. * * *

The petitioner has failed to establish facts which would permit the computation of a mathematically accurate allowance for each of the tax years. However, to allow no amortization, under the present circumstance, would be the one completely wrong conclusion, as the Court of Appeals noted in a somewhat comparable situation in *Cohan v. Commissioner*, 39 F. 2d 540. The teaching of that case is that where

there is an evident right to a deduction but there is no showing of the exact amount of the deduction, the Court is to determine an appropriate amount for the deduction, weighing its judgment heavily against the taxpayer who is responsible for the deficiencies in proof. It would be just as harsh here to deny some deduction as it would have been in *Cohan*. The Court of Appeals in *Bodoglau* v. *Commissioner*, 230 F. 2d 336, affirming *Michael Potson*, 22 T. C. 912, stated:

We think the Tax Court was generous to taxpayer in fixing $100,000 as the amount of cash on hand at the beginning of the net worth period, but under the Cohan rule such determination was proper. It is the function of the trier of the fact to weigh all the elements properly considered in the valuation and to translate them into dollars and cents. Commissioner of Internal Revenue v. Thompson, 3 Cir., 222 F. 2d 893, 895; Colonial Fabrics, Inc. v. Commissioner of Internal Revenue, 2 Cir., 202 F. 2d 105, 107. Nor is it essential that there be testimony of the specific figure fixed by the Tax Court. Burford-Toothaker Tractor Co. v. Commissioner of Internal Revenue, 5 Cir., 192 F. 2d 633, 635. * * *

See also *David J. Pleason*, 22 T. C. 361, affd. (C. A. 7) 226 F. 2d 732.

There was $24,448.75 of remaining cost to be amortized at the time of Frank's death. He had claimed no amortization on the $12,500 cost of the A Agency Renewal Contract during his life and no income was received from it until after his death. The amounts of the amortization deduction taken on Frank's income tax returns for 1941, 1942, 1943, and 1944 were substantially less than the amounts reported as income from the A and B Agencies. *H. B. Hill*, 3 B. T. A. 761. That income, at least from the A Agency, could stem only from the contract here involved for which Frank paid Wyatt $16,139.66. It is thus apparent that Frank was not computing his amortization on a theory that he was first to recover his entire cost before any income was taxable.

Frank died July 3, 1944, and the taxable years are 1946 through 1949. This means that some amortization is to be attributed to the latter half of 1944, and to 1945. The ultimate finding of fact on this issue is that reasonable deductions to be allowed the petitioner in the taxable years are $3,000, $2,500, $2,000, and $1,000 for 1946, 1947, 1948, and 1949, respectively.

The next question is whether the renewal commissions in the amount of $7,441.77 which Standard retained as repayment of advances it had made pursuant to the C Agency Contract are to be included in Frances' gross income for 1946. It was agreed in the contract of May 20, 1941, between Standard and Frank, among other things, that each party was to advance equal amounts up to $20,000 to finance the operations of the insurance agency during the first year of its operation. The amount furnished by the company was to be secured solely by the renewal commissions payable to Frank,

and the latter was not to be personally liable for any of the funds furnished by the company. $10,235 of the advances made by Standard remained unpaid as of the date of the death of Frank. The Commissioner states in his brief that $2,558.23 of this amount was withheld from renewal commissions paid to Frances in 1945, and that "The balance of $7,441.77 was withheld from total renewal commissions due petitioner for the year 1946." Therefore, Frances actually received, in cash, only $17,139.61 although the books of Standard reflect income to her in the amount of $24,581.38. The amount owed to Standard was carried as a liability on the books of the agency and was so considered in the Federal estate tax return of Frank.

The Commissioner argues that the effect of the above transaction is the same as it would have been had the amount of $7,441.77 been received by Frances and she had immediately used the money to pay the existing liability to Standard. Frances argues, however, that the so-called loan was a rearrangement of income distribution and that because the contract provided that no personal obligation of Frank was created and the company was to look only to the renewal commissions for repayment, the $7,441.77 was not income to her.

The advances by Standard to finance the first year's operation under the C Agency Contract were clearly loans. It received no interest in the business of the agency. The fact that it was content to look only to the renewal commissions for repayment of its advance does not change the nature of the transaction. The effect is the same as it would have been had Standard paid to Frances the entire amount of renewal commissions arising under the contract and she had used $7,441.77 thereof immediately to repay Standard for its advances. Cf. *Fay Harvey Moore*, 42 B. T. A. 949, affirmed on this point 124 F. 2d 991. Accordingly, the $7,441.77 withheld by Standard in 1946 is to be included in Frances' gross income for that year.

The assessment and collection of the deficiencies for the calendar years 1946 and 1947 are not barred by the expiration of any statute of limitations but are expressly permitted under section 275 (c) of the Internal Revenue Code of 1939,[5] since the omission of renewal commissions constituted more than 25 per cent of the gross income reported by Frances in her income tax returns for those years. She reported gross income for 1946 and 1947 in the respective amounts of $8,473.70 and $10,138.81 and omitted from gross income renewal commissions in the respective amounts of $24,581.38 and $17,887.38,

---

[5] SEC. 275. PERIOD OF LIMITATION UPON ASSESSMENT AND COLLECTION.
Except as provided in section 276—

＊        ＊        ＊        ＊        ＊        ＊

(c) OMISSION FROM GROSS INCOME.—If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 5 years after the return was filed.

which were properly includible therein. These amounts are in excess of 25 per cent of the gross income reported, and since the statutory notice of deficiency was sent within 5 years after Frances' income tax returns were filed, section 275 (c) applies and assessment and collection of the deficiencies determined for those years are not barred.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

BRUCE, *J.*, dissenting: I concur with the opinion of the majority with respect to all of the issues determined except the issue dealing with the right of the petitioner to deductions for amortization of the cost of the A Agency Contract, the A Agency Renewal Contract, and of Flagg's interest in the B Agency Contract. As to this issue I respectfully dissent.

With respect to the A Agency Renewal Contract I do not think the evidence sufficient to establish that any of the proceeds involved herein arose out of decedent's rights under the A Agency Renewal Contract, and petitioner is not entitled to deduct the costs of this interest out of the proceeds of other contract interests. *Lewis N. Cotlow*, 22 T. C. 1019, affd. 228 F. 2d 186.

With respect to the Flagg interest under the B Agency Contract, assuming petitioner is entitled to recover the cost of this contract through depletion over a period of years, petitioner has failed to produce facts on which the amounts of such deductions may be computed. Unlike *H. B. Hill*, 3 B. T. A. 761, the record herein does not disclose the total income to be anticipated under such contract, although evidence sufficient to establish such fact was obviously in petitioner's possession or could have been obtained from the insurance company. On the other hand, if the cost of this interest was recoverable out of the first renewal commissions received thereunder, there is no evidence that the receipts prior to the years in controversy were not sufficient to have completely reimbursed decedent or petitioner for the consideration paid therefor. Deductions must be taken in the year allowable and are not to be deferred to a later year at the choice of the taxpayer.

As to the A Agency Contract a different problem is presented from that of the A Agency Renewal Contract and Flagg's interest under the B Agency. Here we are dealing with a capital asset which was to be used for the production of income over an indefinite period of years. Cf. *Stewart Title Guaranty Co.*, 20 T. C. 630; *Reserve Natural Gas Co.*, 12 B. T. A. 219; *Christensen Machine Co.*, 18 B. T. A. 256. Where the contract is for an indefinite period no allowance may be made for exhaustion based on the life of the contract, since no exhaustion was taking place which was susceptible of measurement. See *General Equipment Co.*, 2 B. T. A. 804; *Coca-Cola Bottling Co.*, 6 B. T. A. 1333;

Int. Rev. Bull. F (Rev. Jan. 1942), p. 88; *Keokuk and Hamilton Bridge, Inc.*, 12 T. C. 249, 263, reversed on other grounds 180 F. 2d 58. That the A Agency contract was for an indefinite period is not disputed.

Finally, the fact that no question was raised as to deductions for costs taken in decedent's returns for years prior to his death does not estop the Commissioner from contesting such deductions in the years before us. *Schafer* v. *Helvering*, 83 F. 2d 317, affd. 299 U. S. 171. In my opinion there is no room for the application of the *Cohan* rule (*Cohan* v. *Commissioner*, 39 F. 2d 540) in this case. I would accordingly deny the petitioner any deduction for the unrecovered cost of either of the three contracts involved.