*Decision will be entered under Rule 50.*

ESTATE OF FLORENCE E. CARR, DECEASED, WALDO A. VAN VALKENBURGH, SR., EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 82468. Filed March 29, 1962.

*Peter X. McManus, Esq.*, for the petitioner.
*Rudolph J. Korbel, Esq.*, for the respondent.

ARUNDELL, *Judge:* Respondent determined deficiencies in income tax against Florence E. Carr for calendar years and in amounts as follows:

| Year | Deficiency |
|------|-----------|
| 1953 | $2,772.27 |
| 1954 | 1,897.83 |
| 1955 | 1,805.58 |
| 1956 | 1,760.90 |
| 1957 | 1,685.49 |

After petitioning this Court, Florence E. Carr, hereinafter sometimes referred to as taxpayer, died testate on November 25, 1959. Her will was duly admitted to probate by the Essex County Surrogate's Court, in the State of New Jersey, which issued letters testamentary thereon to Waldo A. Van Valkenburgh, Sr., as executor of her estate, and who, by order of this Court dated March 22, 1961, was substituted as petitioner in these proceedings.

Taxpayer, as the original petitioner, assigned the following errors:

(a) The Commissioner erred in holding that the sum of $10,000. received by petitioner from Francis C. Carr & Co. Inc. in each of said years 1953, 1954, 1955, 1956 and 1957, represent income taxable to her under the provisions of Section 126 and/or Section 22(a) of the Internal Revenue Code of 1939 with respect to the year ending December 31, 1953 and under the provisions of Section 691(a) and/or Section 61(a) of the Internal Revenue Code of 1954 with respect to the years ended December 31, 1954, 1955, 1956 and 1957.

(b) The Commissioner erred in failing to hold that the said sums of $10,000. received by petitioner in each of said calendar years 1953, 1954, 1955, 1956 and 1957 from Francis C. Carr & Co. Inc. were constructively received by Francis C. Carr in 1927 or prior thereto and taxable to him during his lifetime, and were gifts by Francis C. Carr of an indebtedness due him from Francis C. Carr & Co. Inc. to his wife to be enjoyed after his death, and were lawfully omitted from her income tax returns in each of said years.

#### FINDINGS OF FACT.

Some of the facts were stipulated and they are incorporated herein.

At the time the petition was filed, taxpayer was an individual sojourning at the Pine Acres Nursing Home, Madison, New Jersey. Her Federal income tax returns for the years involved were filed with the district director of internal revenue, Lower Manhattan, New York, New York.

Taxpayer and Francis C. Carr, hereinafter sometimes referred to as Francis, were married on February 25, 1899. Two daughters were born of the marriage, Florence in 1900, and Beatrice in 1904. Thereafter, difficulties arose between husband and wife and eventually they entered into a separation agreement on April 4, 1929, whereby

Francis obligated himself to pay during his lifetime to the taxpayer $10,000 per annum, to his daughter Florence $1,800 per annum, and to his daughter Beatrice $1,200 per annum.

Francis C. Carr & Co., Inc., hereinafter sometimes referred to as the corporation, was and is a New York corporation with outstanding capital stock of 500 shares, of which 300 shares were owned by Francis who was its president. The corporation was engaged in an insurance brokerage business.

On October 13, 1922, a written agreement was entered into between the corporation as party of the first part, Francis as party of the second part, and the taxpayer and the two daughters as parties of the third part. The contract recited that it was customary in the insurance brokerage business to pay commissions on business produced, in addition to salaries; that the corporation recognized its obligation to pay such commissions to Francis, and that such commissions then exceeded $75,000. Francis waived and released to the corporation all claims for commissions on business produced by him to the date of the contract. In consideration of the release of such commissions to it by Francis, the corporation agreed to pay $7,500 each year to the taxpayer for a period of 10 years from the date of Francis' death. The contract further provided that in the event of the taxpayer's death before the expiration of the 10-year period, the $7,500 annual payments for the balance of such 10-year period would be payable to the two daughters or their issue and, in the event that the taxpayer should predecease Francis or die after him but before the expiration of the 10 years, and both of the daughters should die before the expiration of the 10-year period leaving no issue, then the corporation's obligation shall terminate.

Subsequently, on May 23, 1927, a further contract was entered into by the same parties. This 1927 contract amended the 1922 agreement, recited that the earnings of the corporation had substantially increased in a manner not contemplated in the prior agreement and that Francis was then entitled to commissions in excess of $25,000 on additional business produced by him since 1922. It is further provided in the 1927 contract that the corporation desired to compensate Francis in some manner other than paying to him the commissions on such additional business. Francis thereupon waived and released to the corporation all claims for commissions on business produced by him, and the October 13, 1922, contract was modified by increasing the 10 annual payments to the taxpayer or the daughters to $10,000 a year.

Both the 1922 and 1927 contracts contained the following:

The party of the third part hereby accept this agreement and hereby waive any claim that might hereafter exist in them or any of them with respect to the said claims of the party of the second part for services or for commissions, except for salary accrued and unpaid as aforesaid.

At the respective times these contracts were made, Francis had earned the commissions stated in the contracts over and above his salary and the corporation owed him such commissions.

The taxpayer and her daughters are not and never have been either directors, employees, or stockholders of the corporation.

At the time the 1922 and 1927 contracts were entered into, the financial condition of the corporation was not good and, if Francis had demanded payment to him of the commissions at that time, the corporation could not have paid them although it did pay comparatively smaller commissions to other officers and employees of the corporation.

Each of the stockholders of the corporation had a contract with the corporation whereby upon the death of a stockholder the corporation would buy the stock of the deceased stockholders at its book value or at $300 per share whichever was greater. At the time Francis died in 1951 the book value of the stock of the corporation was less than $300 per share, whereupon the corporation purchased the 300 shares owned by Francis from his estate for $90,000.

Francis died on June 21, 1951, and pursuant to the 1922 and 1927 contracts the corporation paid the taxpayer the sum of $10,000 in each of the years 1953 to 1957, inclusive. These amounts were not reported by the taxpayer as income. The respondent determined that the amounts so paid constituted taxable income to the taxpayer and, in a statement attached to the deficiency notices, explained his determination thus:

(a) You have failed to report as income $10,000.00 received from your deceased husband's former employer, Francis C. Carr & Co. Inc., during each of the taxable years ended December 31, 1953, December 31, 1954, December 31, 1955, December 31, 1956 and December 31, 1957. It has been determined that those payments represent income taxable to you under the provisions of Section 126 and/or Section 22(a) of the Internal Revenue Code of 1939 with respect to the year ended December 31, 1953, and under the provisions of Section 691(a) and/or Section 61(a) of the Internal Revenue Code of 1954 with respect to the years ended December 31, 1954, December 31, 1955, December 31, 1956 and December 31, 1957.

#### OPINION.

The only difference between the facts in this case and the facts in *Florence E. Carr*, 28 T.C. 779, petition for review to C.A. 2 dismissed pursuant to a stipulation for dismissal filed by the parties on April 16, 1958, is that the payments to the taxpayer under the 1922 and 1927 contracts in the instant case were made in 1953 through 1957 whereas in the earlier case they were made in 1951 and 1952. Ordinarily this difference would not require a different holding. Cf. *Commissioner* v. *Sunnen*, 333 U.S. 591. However, in *Florence E. Carr, supra*, we began our opinion with the statement that:

Cases holding amounts taxable as income to a widow under section 126 of the Internal Revenue Code [of 1939] are not in point since the Commissioner does not mention and is not relying upon section 126.

In the instant proceeding the respondent specifically based his determination upon section 126 and/or section 22(a), I.R.C. 1939, with respect to 1953, and upon section 691(a) and/or section 61(a) with respect to the years 1954 through 1957. We are therefore bound to consider the statutory sections not heretofore considered. *Commissioner* v. *Sunnen, supra.*

Sections 126 and 691 are substantially the same, the material provisions being as follows:

(a) INCLUSION IN GROSS INCOME.—

(1) GENERAL RULE.—The amount of all items of gross income in respect of a decedent which are *not properly includible in respect of* the taxable period in which falls the date of his death or *a prior period* shall be included in the gross income, for the taxable year when received, of:

\*       \*       \*       \*       \*       \*       \*

(B) the person who, by reason of the death of the decedent, acquires the right to receive the amount, if the right to receive the amount is not acquired by the decedent's estate from the decedent; *or*

\*       \*       \*       \*       \*       \*       \*

(3) CHARACTER OF INCOME DETERMINED BY REFERENCE TO DECEDENT.—The right, described in paragraph (1), to receive an amount shall be treated, in the hands of the estate of the decedent or any person who acquired such right by reason of the death of the decedent, or by bequest, devise, or inheritance from the decedent, as if it had been acquired by the estate or such person in the transaction \* \* \* and the amount includible in gross income under paragraph (1) or (2) shall be considered in the hands of the estate or such person to have the character which it would have had in the hands of the decedent if the decedent had lived and received such amount.

[Emphasis supplied.]

Section 126 was added to the 1939 Code by section 134(e) of the Revenue Act of 1942. The section was explained in S. Rept. No. 1631, 77th Cong., 2d Sess. (1942–2 C.B. 504, 579, 580), in part, as follows:

Since the Revenue Act of 1934 the revenue laws have contained provisions including in the income of a decedent for the period in which falls the date of his death all income accrued up to the date of his death not otherwise *properly includible in respect of* such period or *a prior period.* While such income should be subject to income tax, hardship results in many cases from including in the income for the decedent's last taxable period amounts which ordinarily would be receivable over a period of several years. This section changes the existing law by providing that such amounts shall not be included in the decedent's income but shall be treated, *in the hands of the persons receiving them,* as income of the same nature and to the same extent as such amounts would be income if the decedent remained alive and received such amounts. \* \* \*

\*       \*       \*       \*       \*       \*       \*

All amounts of gross income which are not includible in the income of the decedent will, when received, be includible in the income of the person receiving

such amounts by inheritance or survivorship from the decedent under section 126, to be added to the Code by subsection (e) of this section. The persons who are placed, with respect to such amounts, in the same position as the decedent are * * * those who acquire the right to such amounts by reason of the death of the decedent. * * *
[Emphasis supplied.]

See similar statements in H. Rept. No. 2333, 77th Cong., 1st Sess. (1942–2 C.B. 372, 435–436).

As we read sections 126 and 691, if the income here in question was "properly includible [in the decedent's income during his lifetime] in respect of * * * a prior period," then sections 126 and 691 have no application.

Francis was on the cash basis and at the time the contracts of 1922 and 1927 were entered into, he had not reported any of the earned commissions as income because he had not received any of the commissions either actually or constructively, the financial position of the corporation not being good at the time. We assume from the record that at no time during his life did Francis ever report any of the $100,000 of commissions earned by him prior to May 23, 1927.

The executor of his wife's estate (the present petitioner) now contends that in line with *Helvering* v. *Horst*, 311 U.S. 112, and *Helvering* v. *Eubank*, 311 U.S. 122, Francis should have returned as taxable income the $75,000 of earned commissions in 1922 when the first contract was entered into and $25,000 in 1927 when the second contract was entered into upon the ground that upon the execution of these contracts the economic position of Francis relative to his commissions had completely changed; that he no longer had any right to the commissions; that in consideration of his release of all claims for such earned commissions the corporation agreed to pay, after the death of Francis, $100,000 at the rate of $10,000 a year to others. The executor argues that, before the contracts of 1922 and 1927 were entered into, Francis had the right to demand payment to him of the earned commissions; that he also had the power to command such payment to others; that he took the latter course; and that in so doing he realized an economic gain which should have been returned as income at the time the contracts were made, citing *Duran* v. *Commissioner*, 123 F. 2d 324 (C.A. 10, 1941), affirming a Memorandum Opinion of this Court.

In the *Horst* case a father owned certain negotiable bonds with attached negotiable interest coupons. In 1934 and 1935 he detached from the bonds the interest coupons shortly before their due date and delivered them as a gift to his son who in the same year collected them at maturity. The Government contended that the interest payments were taxable to the father who reported his income on the cash receipts basis *in the years when the interest was paid to the son*. In sustain-

ing the Government's contention, the Supreme Court, among other things, said:

The question here is, whether because one who in fact receives payment for services or interest payments is taxable only on his receipt of the payments, he can escape all tax by giving away his right to income in advance of payment. * * *

Although the donor here, by the transfer of the coupons, has precluded any possibility of his collecting them himself he has nevertheless, by his act, procured payment of the interest, as a valuable gift to a member of his family. Such a use of his economic gain, the right to receive income, to procure a satisfaction which can be obtained only by the expenditure of money or property, would seem to be the enjoyment of the income whether the satisfaction is the purchase of goods at the corner grocery, the payment of his debt there, or such non-material satisfactions as may result from the payment of a campaign or community chest contribution, or a gift to his favorite son. Even though he never receives the money he derives money's worth from the disposition of the coupons * * *. The enjoyment of the economic benefit accruing to him by virtue of his acquisition of the coupons is realized as completely as it would have been if he had collected the interest in dollars and expended them for any of the purposes named. * * *

It is true that in the *Horst* case the Supreme Court held that one on the cash basis could not escape tax on interest income by giving the coupon away before the interest became due, yet it should be noted that the donor was not taxed until the interest became due *and was paid* to the donee. In the instant case the commissions were past due when the contracts of 1922 and 1927 were executed. The reason such commissions had not been paid to Francis was due to the poor financial position of the corporation. If, after May 23, 1927, the financial position of the corporation might have improved, the corporation, under the 1922 and 1927 contracts, was not under obligation to pay any of the $100,000 of commissions to anyone until after the death of Francis. If in the contracts of 1922 and 1927 Francis had provided that the $100,000 was to be paid to his wife in 10 annual payments, say, beginning January 1, 1930, and the payments were so made by the corporation, then it would seem that, under the *Horst* and *Eubank* cases, Francis would be taxable on the payments *when made*. But that was not the situation here. No *payments* were to to be made by the corporation until after Francis died. But that does not mean that the Government should lose its tax on the earned commissions. See S. Rept. No. 1631, *supra*.

We do not agree with the present petitioner's contention that, in line with the *Horst* and *Eubank* cases, Francis should have returned the commissions as income at the time the 1922 and 1927 contracts were signed. The fact is he did not do so and the respondent has never made any contention that he should have done so. It is a fundamental theory of income tax law that it is essential to the taxation of income that it has been *realized* by the taxpayer to whom it is

proposed to tax it. *Campbell* v. *Protho*, 209 F. 2d 331 (C.A. 5, 1954).[1] Here, there was no income *realized* by Francis from his $100,000 of earned commissions either prior or subsequent to the contracts of 1922 and 1927. Under the contracts, no *payments* were to be made until after Francis had died. We think that under these circumstances the commissions were "gross income in respect of a decedent" as that phrase is used in sections 126 and 691, *supra*, and that they were "not properly includible in respect of the taxable period in which falls the date of his death or a prior period" because they were not *payable* until after his death.

We think it follows that under sections 126 and 691(a)(1)(B) such gross income "shall be included in the gross income, for the taxable year when received, of * * * (B) the person who, by reason of the death of the decedent, acquires the right to receive the amount." This person was the taxpayer, Florence E. Carr, now deceased. We hold that the respondent did not err in his determination of the deficiencies herein. Cf. *Frances E. Latendresse*, 26 T.C. 318, affd. 243 F. 2d 577 (C.A. 7, 1957).

*Decision will be entered for the respondent.*

---

[1] See also *Annie A. Colby*, 45 B.T.A. 536; *Estate of W. G. Farrier*, 15 T.C. 277; *Elsie SoRelle*, 22 T.C. 459, Issue III, 475–479; and Miller "Gifts of Income and of Property: What the *Horst* Case Decides," 5 Tax Law Review 1–15 (1949).