ARMIN F. AND GLORIA J. THIELKING, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, RespondentThielking v. CommissionerDocket No. 9418-83.United States Tax CourtT.C. Memo 1987-201; 1987 Tax Ct. Memo LEXIS 197; 53 T.C.M. (CCH) 618; T.C.M. (RIA) 87201; April 14, 1987. Paul M. Thielking, for the petitioners. Rogelio A. Villageliu, for the respondent. WELLSMEMORANDUM OPINION WELLS, Judge *: Respondent determined deficiencies in petitioner Armin F. Thielking's Federal income taxes for taxable years 1978 and 1979 in the amounts of $1,612.40 and $9,279.20, respectively. Respondent determined a deficiency in both petitioners' Federal income taxes for the taxable year 1980 in the amount of $2,462.00. After concessions, the issues to be decided are: (1) whether commissions paid in connection with lease agreements should be amortized over the term of each respective lease or currently expensed; and (2) whether petitioners, as noncorporate lessors, are eligible to claim an investment tax credit under section 381 for certain leased property. *199 This case was submitted fully stipulated. The stipulation of facts and attached exhibits are incorporated herein by reference. The pertinent facts are summarized below. Petitioners resided in Des Moines, Iowa, at the time their petition was filed. During the taxable year 1980, petitioners were married to each other and filed a joint Federal income tax return. At issue in this case are petitioner Armin F. Thielking's taxable years 1978 and 1979, and petitioners' taxable year 1980. During the taxable years 1978, 1979, and 1980, petitioner Armin F. Thielking (hereinafter referred to as "petitioner" in the singular) leased certain property hereinafter described, 2 using either Thielking Leasing, Inc., (hereinafter referred to as "Thielking Leasing") or Z-King Leasing, Inc., (hereinafter referred to as "Z-King") as his broker. Petitioner, using the services of the brokers, purchased property to meet the specifications of the various lessees. Petitioner obtained loans from a third-party financial institution in order to purchase the property to be leased. As security for the loans, petitioner assigned each lease to the third-party financial institution with recourse. Petitioner*200 was also personally liable for the repayment of the loans. Advance lease payments were made by the lessees at the inception of the various leases and were used by petitioner to pay a commission to Thielking Leasing or to Z-King, pursuant to lease brokerage agreements, 3 for services rendered to that date. All other lease payments were made directly by the lessees to the third-party financial institution until the loans, including interest, were fully paid. Lease payments in excess of the principal and interest on the loans would inure to the benefit of petitioner. *201 The property leased by petitioner during 1978 is set forth in Appendix A along with other data relating to that property. In addition to the commissions noted above, petitioner incurred and paid freight expenses of $200.00 and installation expenses of $564.00 with respect to the property set forth in Appendix A. Petitioner initially claimed a useful life of seven years on his individual income tax return for 1978 for each of the items of property set forth in Appendix A. Petitioner amended his Federal income tax return for 1978 by changing the estimated useful life of each of the items of property set forth in Appendix A from seven to ten years. The property leased by petitioner during 1979 is set forth in Appendix B along with other data relating to that property. The property leased by petitioner during 1980 is set forth in Appendix C along with other data relating to that property. Appendix D sets forth a description of the property set forth in Appendices A, B, and C; the first 12 months income from the respective leases; the amount equal to 15 percent of such income; the commission paid at the inception of the respective leases; the respective lease terms; and the amount*202 of commission amortized for the first 12 months of each respective lease. The amount paid as a commission to the broker at the inception of each respective lease was nonrefundable. Pursuant to each respective brokerage agreement, additional fees were payable by petitioner for services performed by the broker upon the sale or trade-in of the leased property. The advance lease payments made by each lessee at the inception of each respective lease have been included in petitioners' income in the year received. The first issue for decision is whether these commissions may be deducted in the year paid or whether they must be amortized over each respective lease term. Petitioners contend that the commissions paid at the inception of each respective lease for services already rendered constitute section 162 expenses and should be deductible in full in the year of payment. Additional compensation would be paid for additional services rendered in connection with each respective lease. In addition, petitioners claim that because the advance lease payments paid to petitioner by lessees were included in petitioners' income in the year paid, petitioners should be entitled to deduct the*203 commission expense paid from these advances in order to avoid a distortion of income. Respondent, on the other hand, claims that the nonrefundable commissions are capital expenditures incurred to secure or procure leases and that the commissions are to be spread ratably over the terms of the leases. We agree with respondent. The principal function of the term "ordinary" in section 162(a) is to differentiate between expenses that are currently deductible and those that are capital in nature. Commissioner v. Lincoln Savings and Loan Association,403 U.S. 345, 353 (1971). Expenditures to acquire assets or secure benefits which last beyond the taxable year of the expenditure must be capitalized. Section 1.263(a)-2(a), Income Tax Regs.; Seligman v. Commissioner,84 T.C. 191, 201 (1985), affd. 796 F.2d 116 (5th Cir. 1986). It is now well settled that commissions paid by a lessor to brokers or agents for securing and negotiating a lease for a term of years are not ordinary and necessary expenses that can be deducted in the year paid, but are capital expenditures to be amortized over the term of the lease. *204 Griffiths v. Commissioner,70 F.2d 946 (7th Cir. 1934), affg. 25 B.T.A. 1292 (1932); Home Trust Co. v. Commissioner,65 F.2d 532 (8th Cir. 1933), and cases cited therein.4Petitioners argue that Griffiths and Home Trust Co. are distinguishable because they involved long-term real estate leases whereas the present case involves short-term personal property leases. Petitioners' attempt to distinguish these cases is not persuasive. Petitioner, by acquiring a lease for a term of years, has secured the benefit of the right to receive rental payments for a fixed period of time in the future. Thus, the nature of the property being leased, i.e., real versus personal property, is not determinative -- the right to receive the future rental payments was the asset acquired and with respect to which the commissions were paid. In Munger v. Commissioner,14 T.C. 1236, 1238 (1950), this Court held that there was no reason to distinguish between short-term or long-term leases, finding that the lessor who had obtained a short-term lease had acquired a*205 contract from which income could be derived in the future, just as would be the case if a long-term lease were acquired. As we noted above, our inquiry focuses on whether the expenditure (i.e., the commissions paid) is made to acquire assets or secure benefits (i.e., each lease for a term of years) that last beyond the taxable year of the expenditure. Petitioners claim that the services rendered were not merely for procuring the leases. Petitioners do not enumerate the services that were rendered, but merely refer to the brokerage agreements. In addition to services rendered in connection with procuring the respective leases, the agreements refer to services rendered in connection with the administration and management of the respective leases, which services will presumably be performed during the lives of the respective leases. It has been held that amounts paid at the inception of a lease for future services represent capital expenditures which must be spread ratably over the life of the lease. Seligman v. Commissioner,supra at 201-203. In the present case, the services to be rendered by the broker in connection with the administration and management of*206 the respective leases are future services in the nature of the services performed in Seligman.Petitioners next claim that additional compensation will be paid to the brokers for additional future services. We agree with respondent that even though future payments will cover future services, the initial payments for securing each respective lease cover benefits which extend throughout each respective lease term. The commissions are paid for securing each lease, and each lease in turn secures the right to receive future income. The law is well settled that advance lease payments are included in income, and commissions for securing a lease must be amortized. Renwick v. United States,87 F.2d 123 (7th Cir. 1936). The next issue for decision is whether petitioners are entitled to claim the investment tax credit under section 38. The parties agree that if petitioners meet the requirements of section 46(e)(3)(B) relating to noncorporate lessors, they are eligible for the credit. That section provides, in pertinent part, as follows: (e) LIMITATIONS WITH RESPECT TO CERTAIN PERSONS. -- * * * (3) Noncorporate lessors. *207 A credit shall be allowed by section 38 to a person which is not a corporation with respect to property of which such person is the lessor only if -- * * * (B) the term of the lease (taking into account options to renew) is less than 50 percent of the useful life of the property, and for the period consisting of the first 12 months after the date on which the property is transferred to the lessee the sum of the deductions with respect to such property which are allowable to the lessor solely by reason of section 162 (other than rents and reimbursed amounts with respect to such property) exceeds 15 percent of the rental income produced by such property. With the possible exception of property leased in 1978, petitioners fail to satisfy the requirement that the sum of the section 162 deductions exceed 15 percent of the first 12 months of rental income. The parties have stipulated that the only expenses incurred with respect to the leases are the commissions, interest, depreciation, and, with respect to the 1978 lease, freight and installation expenses. We have already found that the commissions are not ordinary and necessary business expenses deductible under section 162. Interest*208 and depreciation, deductible under section 163 and section 167, respectively, clearly are not section 162 deductions as required by section 46(e)(3)(B). With respect to the property leased in 1978, the expenses paid toward satisfaction of the 15-percent requirement were freight and installation expenses of $764.00. Nevertheless, not a single item of property leased in 1978 is eligible for the credit because petitioner has failed to prove that the lease term of 60 months is less than 50 percent of the useful life of each of such items (the several items of property leased in 1978, which are listed in Appendix A, were leased under one lease agreement). On petitioner's original return, he claimed a useful life for each item of property of seven years. Clearly, under those circumstances the property is not eligible for the credit. Subsequently, however, petitioner filed an amended return, claiming a useful life of 10 years for each item of property leased in 1978. Petitioner argues that section 1.167(a)-1(b), Income Tax Regs., allows modifications to be made to the initial determination of the useful lives on an amended return. That section of the regulation states in pertinent*209 part as follows: The estimated remaining useful life may be subject to modification by reason of conditions known to exist at the end of the taxable year and shall be redetermined when necessary regardless of the method of computing depreciation. However, estimated remaining useful life shall be redetermined only when the change in the useful life is significant and there is a clear and convincing basis for the redetermination. * * * A redetermination of the useful life of property may only be based upon conditions known to exist at the end of the taxable year for which the return is being made. Secs. 1.167(b)-0(a) and 1.167(a)-1(b), Income Tax Regs.; Southern Pacific Transportation Co. v. Commissioner,75 T.C. 497, 668-672 (1980). In the present case, because petitioner has amended his Federal income tax return for the taxable year 1978 (the year the items of property were placed in service) in order to redetermine the useful life of each item of property leased in 1978, our inquiry is limited to the conditions known to exist at the end of that taxable year. Petitioner has not supplied a clear and convincing basis for the redetermination of the useful life*210 of each item of property for 1978. In light of petitioner's contradictory claims concerning the useful lives of the leased property and the absence of evidence to establish the proper lives, petitioner has failed to prove that the term of the 1978 lease agreement was less than 50 percent of the useful life of each item of property leased under the agreement. Moreover, we note that the statutory requirement is that the term of the lease must be less than 50 percent of the useful life of the property. If we were to accept petitioner's redetermination of the useful lives of the property, the term of the 1978 lease agreement would only be equal to 50 percent of the useful life of each item of property leased under the agreement. Petitioner would therefore not satisfy the 50-percent test, and would not qualify for the investment tax credit. Petitioners argue that because petitioner's leasing activity was not a sham, there is no need to meet the requirements of section 46(e)(3). That same argument was raised by the taxpayer in *211 Ridder v. Commissioner,76 T.C. 867, 876 (1981). This Court rejected the argument, stating the following: In drafting section 46(e)(3)(B), Congress could have chosen a rule based upon the benefits and burdens of ownership in light of all the relevant facts and circumstances. * * * But they did not. Instead, Congress decided to impose two hard-and-fast tests * * *. In effect, Congress chose a more easily administered approach (which, for taxpayers, provides predictability) and sacrificed some small measure of perfect equity. * * * See also Hokanson v. Commissioner,730 F.2d 1245, 1250 (9th Cir. 1984), affg. a Memorandum Opinion of this Court. Decision will be entered under Rule 155.APPENDIX A *Property Leased In 1978DateDateAcquisitionLeaseItemAcquiredLeasedCost ($ )LesseeTerm (in months)Station-12-20-7812-20-785,990.00Iowa Paint60aryManufacturingcompac-Co.torDrive-on12-20-7812-20-78875.00Iowa Paint60rampManufacturingCo.Hand12-20-7812-20-78160.00Iowa Paint60railManufacturingkitCo.Dock12-20-7812-20-78370.00Iowa Paint60hopperManufacturingCo.*212 APPENDIX B Property Leased In 1979Useful LifeClaimedLeaseByDateDateAcquisitionTerm (inPetitionerItemAcquiredLeasedCost ( $ )Lesseemonths)(in months)One 3M3-20-793-20-791,995.00Charlotte4896copierCrippend/b/a Mid-IowaMedicare Con-sultantServicesThree SpeedQueen, McGrawEdison Super20 washers,3-27-793-27-795,073.00Steve Hillis60120oned/b/a/ FourMilner 35Cornerswasher-Cleanersextractor,and fiveG.E. toploadcommercialwashersOne6-12-796-12-791,234.00Craigmont3684EconoCare CenterSystemOne Ben11-14-7911-14-7914,948.00J. & J. Oil4896Pearson& Tire,pipe bendingIncorporatedmachineand oneGrand TR 5hoistOne John4-20-794-20-795,000.00Billy W.60120Deere 60Huddlesonskid steerloaderConcrete5-01-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,000.00Stephen R.60120formsLongOne Ford5-01-795-01-794,376.25Stephen R.36841979 truckLong*213 APPENDIX C Property Leased In 1980LeaseUseful LifeTermClaimed ByDateDateAcquisition(inPetitionersItemAcquiredLeasedCost ( $ )Lesseemonths)(in months)One 19808-14-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,382.50Dave Williams60120FordDisposaltruckServicechassisOne 3M3-10-803-10-801,630.00Darrell D.2448compactBrown, D.O.,copierP.C.Projection3-10-803-10-803,513.43L.C.L.60120equipmentEnterprises,Inc.APPENDIX D Composite Schedule Of Data With Respect To Leased Property15% ofCommission1stFirstPaidLeaseCommissionDescription12 Months12 MonthsAt LeaseTermAmortizedLeaseofIncomeIncomeInception(inFor FirstNo.Equipment( $ )( ]( $ )months)12 Months ( $ )1117Compactor,2,988.44448.271,475.3960295.08ramp, andhopper(NoCopier841.40126.21298.374874.59number)1133Washers1,847.72277.16604.3960120.881138Skid steer1,420.00213.00666.0760133.21loader1132Econo702.52105.38164.373654.79System1158Pipe6,487.32973.101,980.0748495.02bendingmachine &hoist* 1136Concrete10,094.001,514.103,913.1160391.31forms(1/2 of(1/2 of 782.62)20,188)* 1141Ford truck2,242.38336.36543.023690.50(1/2 of(1/2 of 181.01)4484.76)* 1202Ford7,708.541,156.282,593.9460259.39chassis &(1/2 of(1/2 of 518.79)Sanicruiser15,417.08)refuse body1186Copier1,245.72186.86165.652482.82* 1193Projection1,443.95216.59416.006041.66equipment(1/2 of(1/2 of 83.32)2,887.92)*214 Footnotes*. By order of the Chief Judge, this case was assigned to Judge Wells↩ for decision and opinion. 1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue.↩2. For purposes of this opinion, it has been assumed that petitioner conducted his leasing activity during the taxable year 1980 without the involvement of his wife. Nevertheless, both petitioners' liability for taxes for the taxable year 1980 is in issue because, as noted, they filed a joint Federal income tax return for that taxable year. ↩3. The lease brokerage agreement entered into between petitioner and Thielking Leasing (referred to in the lease brokerage agreement as "T.L. Inc.") on December 20, 1978, provides, in pertinent part, as follows: WHEREAS, Owner is desirous of purchasing and owning certain equipment as hereinafter described and of leasing said equipment; and WHEREAS, T.L. INC. has located a prospective lessee for said equipment and has negotiated terms and conditions of a lease agreement acceptable to Owner, and is willing to assist in the administration and management of the proposed lease arrangement and to provide certain services to Owner in connection therewith. NOW, THEREFORE, in consideration of the premises and mutual covenants hereinafter contained and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows: * * * 2. Services of T.L. INC.T.L. INC. agrees to provide the following services in connection with the entering into and management and administration of the lease: (a) To prepare the Lease in final form pursuant to all terms and conditions acceptable to Owner and Lessee for execution by said parties to the Lease. (b) To cause said Lease, upon full execution to be filed of record with the County Recorder in the County where the lessee has its principal place of business. (c) To assist in the procurement of all policies of insurance regarding the Leased Equipment and the Lessee as is required to be maintained by the Lessee pursuant to the terms of the Lease. (d) To assist, advise and consult with Owner regarding the manner in which Owner should or can enforce its rights under the Lease in the event of defaults thereon by Lessee or in the event of delinquency by Lessee in the performance thereon. (e) To assist, advise and consult with Owner regarding the disposition of the Leased Equipment, either by sale or re-leasing, upon the termination of the Lease or after repossession by Owner upon a breach of the Lease by Lessee; and (f) To generally advise and consult with Owner regarding the desirability, advisability or propriety of pursuing various or alternative courses of action that may become available to Owner during and in connection with the administration and management of the Lease. 3. Compensation. For the services agreed to be performed by T.L. INC., Owner shall pay to T.L. INC. the following fees: (a) A base fee in the total sum of $1475.39 payable as follows: (1) $     concurrent with the execution of this Agreement; PLUS (b) An amount equal to 50% of the proceeds of the sale of the Leased Equipment upon the completion of the term of the lease. (c) An amount equal to 10% of original equipment cost should equipment be traded in for other equipment. (d) An amount equal to 50% of the balance of cash remaining after sale of equipment (if applicable) and payoff of lender should LESSEE default, payoff in advance of the term of the lease or should there be a casualty loss or theft. Should the payoff funds be insufficient to satisfy the lender's outstanding balance, it will be the owner's sole responsibility to alleviate the deficiency. The other lease brokerage agreements in question, including those entered into with Z-King, contain similar provisions -- only the amount of the base fee was different.↩4. Lemos v. Commissioner,T.C. Memo. 1973-117↩.*. All of these items of property were leased under one lease agreement (Lease No. 1117).↩*. Petitioner had only a 50% interest in the lease.↩