PAUL W. THIELKING, O.D., P.C., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; PAUL W. AND LEILA C. THIELKING, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, RespondentPaul W. Thielking, O.D., P.C. v. CommissionerDocket Nos. 893-84, 956-84.United States Tax CourtT.C. Memo 1987-227; 1987 Tax Ct. Memo LEXIS 227; 53 T.C.M. (CCH) 746; T.C.M. (RIA) 87227; May 4, 1987. Paul M. Thielking, for the petitioners. Mark E. O'Leary, for the respondent. WELLSMEMORANDUM OPINION*229 WELLS, Judge *: In these consolidated cases, respondent determined the following deficiencies: Docket No.PetitionerYearDeficiency893-84Paul W.1976$348.34Thielking,197744.20O.D., P.C.1978104.80197963,246.65198044,223.47956-84Paul W. &1973$568.78Leila C.19743,951.86Thielking19751,804.73197610,653.7819778,301.44197813,764.631979137,940.54198041,930.01After concessions, the issues for decision are (1) whether withdrawals made by petitioner Paul W. Thielking from petitioner Paul W. Thielking O.D., P.C. during 1979 and 1980 were loans or constructive dividends; (2) if the withdrawals were loans, whether petitioners Paul W. and Leila C. Thielking are entitled to deduct interest expenses claimed to have been incurred on the withdrawals; and (3) whether petitioners Paul W. and Leila C. Thielking are entitled to claim an investment tax credit under section 38 1 for certain leased property. *230 This case was submitted fully stipulated. The stipulation of facts and exhibits thereto are incorporated herein by reference. The pertinent facts are summarized below. Petitioner Paul W. Thielking, O.D., P.C. is an Iowa professional corporation which had its principal place of business in Des Moines, Iowa, at the time its petition was filed. Paul W. Thielking, O.D., P.C. filed its Federal income tax returns using a calendar year as its annual accounting period. Petitioners Paul W. and Leila C. Thielking, husband and wife, resided in Des Moines, Iowa, at the time their petition was filed. Paul W. and Leila C. Thielking filed joint Federal income tax returns for the taxable years in issue. Constructive Dividend v. Loan IssuePaul W. Thielking (hereinafter referred to as Dr. Thielking), an optometrist, entered into a partnership on August 1, 1958, with two other optometrists, and on August 1, 1972, a fourth optometrist joined the partnership. The partnership conducted business as Optometric Associates. On August 1, 1974, Paul W. Thielking, O.D., P.C. (hereinafter referred to as "the corporation") was incorporated under Chapters 496A and 496C of the Iowa Code. Dr. Thielking*231 was the corporation's sole incorporator. On August 1, 1974, Dr. Thielking executed a document entitled "Assignment" that purported to assign all of his partnership rights in Optometric Associates to the corporation. On the same date, the corporation and Dr. Thielking executed a document entitled "Employment Agreement." That agreement stated in part: 2. Compensation(a) Corporation Agrees: To pay Employee of the sum of $42,000, commencing August 1, 1974 in 24 equal semi-monthly installments. Employee's compensation is to be reviewed by the Board of Directors annually. The above salary shall be continued until changed by action of the Board of Directors. At all times from the incorporation through 1980, Dr. Thielking was the president and secretary-treasurer of the corporation, the only member of the board of directors, and the only employee of the corporation. Dr. Thielking and the trustee of the Paul W. Thielking, O.D., P.C. Employee Stock Ownership Trust were the corporation's only shareholders. The number of shares owned by Paul W. Thielking and the trustee of the Paul W. Thielking, O.D., P.C. Employee Stock Ownership Trust on December 31 of each year from 1975*232 to 1980, inclusive, are as follows: Dr.Paul W. Thielking, O.D., P.C.ThielkingEmployee Stock Ownership TrustDecember 31, 197530681  December 31, 197630681  December 31, 197730747  December 31, 197830783  December 31, 1979301,044December 31, 1980301,044The trustee of the Paul W. Thielking, O.D., P.C. Employee Stock Ownership Trust for each of the years 1975 to 1980, inclusive, was Daniel D. Hinson. The only beneficiary of the Paul W. Thielking, O.D., P.C. Employee Stock Ownership Trust during the years 1975 to 1980, inclusive, was Dr. Thielking. From its incorporation through 1980, the corporation did not declare any dividends. During the taxable years 1975 through 1980, the corporation reported the following gross income: YearGross Income Per Return1975$71,408.16197682,110.70 197776,419.90 197885,207.68 1979144,125.42198065,614.13 During the taxable years 1975 through 1980, the corporation reported the following taxable income: YearTaxable Income Per Return1975$6,989.96197625,788.09197718,890.5819781,838.23 197926,312.70198012,525.49*233 During the taxable years 1975 through 1980, the corporation reported the following retained earnings: YearRetained Earnings1975($13,511.58)197631,726.24 197745,179.65 197849,411.67 197977,978.31 198090,498.80 During the taxable years 1975 through 1980, the corporation had the following current earnings and profits: YearCurrent Earnings and Profits1975$7,202.46197646,821.19197713,674.4119784,756.02 197957,270.64198012,520.49During the taxable years 1975 through 1980, the corporation had the following accumulated earnings and profits: YearAccumulated Earnings and Profits1975($13,511.58)197631,726.24   197745,400.65   197850,156.67   1979107,427.31  1980119,947.80  During the taxable years 1975 through 1980, the corporation paid Dr. Thielking the following amounts as salary: YearSalary1975$30,500.00197624,000.00197717,003.00197812,000.00197966,718.27198012,000.00During the taxable years 1975 through 1980, the corporation paid Dr. Thielking the following amounts pursuant to its employee medical*234 reimbursement plan: Employee MedicalYearReimbursements1975$1,174.38 19761,371.45 19771,195.79 19784,258.06 1979(249.03)19804,422.08 During the taxable years 1975 through 1980, the corporation paid Dr. Thielking the following amounts as deferred compensation: YearDeferred Compensation197519763,600.0019772,550.4519781,800.00197919801,800.00At the end of each of the taxable years 1975 through 1980, the corporation reported loans from its shareholders in the following amounts: YearLoans From Shareholders1975$37,678.04197640,579.20 197765,437.71 197834,061.48 19791980During the taxable year 1979, Dr. Thielking made the following withdrawals from the corporation: Date of WithdrawalAmount1-01-79$ 4,220.151-01-79119.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.001-16-799,000.001-16-792,000.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,484.851-20-79400.002-01-795,000.001-09-799,521.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,510.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,034.623-19-792,000.004-09-795,200.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.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.365-01-79429.925-01-79903.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,000.006-11-79150,000.00Total$247,930.67*235 During the taxable year 1979, Dr. Thielking's payments or credits toward the withdrawals that he made from the corporation were as follows: Date of Payment or CreditAmount1-01-791 $34,061.481-01-792 24,718.271-01-793 5,172.741-20-794 400.004-25-791,000.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,000.0010-2-793,000.00Total$93,352.49During the taxable year 1980, Dr. Thielking made the following withdrawals from the corporation: Date of WithdrawalAmount1-01-80 $ 700.001-01-80 3,191.481-01-80 3,318.394-04-80 5,000.005-05-80 7,000.005-06-80 7,000.005-19-80 1,600.007-13-80 4,000.009-03-80 5,000.009-24-80 5.0010-07-805,000.0010-25-801,000.0011-10-802,000.0012-23-807,500.00Total$52,314.87*236 During the taxable year 1980, Dr. Thielking's payments or credits toward the withdrawals that he made from the corporation were as follows: Date of Payment or CreditAmount1-01-801 $4,220.15Total$4,220.15The following is a summary of the net withdrawals and the adjusted net withdrawals made by Dr. Thielking from the corporation during the taxable years 1979 and 1980: 19791980Beginning of Year($34,061.48)$154,578.18 End of Year154,578.18 202,672.90 Net Withdrawals$188,639.66 $ 48,094.72 Adjusting Entry3,318.39 (3,318.39)Adjusted Net Withdrawals$191,958.05 $ 44,776.33 During 1981, Dr. Thielking made withdrawals from the corporation totalling $51,042.29. During 1982, Dr. Thielking made withdrawals totalling $56,519.15 and made payments or was credited for amounts totalling $70,027.54. During 1983, Dr. Thielking made withdrawals totalling $63,313.53 and made payments or was credited for amounts totalling $140,712.68, so that by the end of 1983, Dr. Thielking had a balance owing*237 of $162,807.65. Dr. Thielking did not execute any notes or other instruments in regard to the withdrawals which he made from the corporation during 1979 and 1980, nor was any security provided for any of the withdrawals. In addition, no agreements or plans existed which fixed the time and plan for repayment of the withdrawals. None of the minutes of the board of directors' meetings or annual stockholders' meetings indicate that the withdrawals which Dr. Thielking made from the corporation during the taxable years 1979 and 1980 were authorized by the corporation, its officers, or its shareholders. During the years at issue, Dr. Thielking caused a journal entry to be made on the books of the corporation reflecting accrued interest on the net withdrawals he made from the corporation during those years, with a corresponding credit to interest income of the corporation each year. Dr. Thielking deducted the amounts as interest expenses on his 1979 and 1980 returns in the amounts of $7,605.92 and $10,426.08, respectively. The corporation reported the amounts as interest income on its respective 1979 and 1980 returns. However, no actual cash interest payments were made by Dr. Thielking*238 to the corporation during the taxable years 1979 and 1980. Dr. Thielking's adjusted basis in the stock of the corporation was $300.00 at the beginning of the taxable year 1979. The issue for decision is whether the adjusted net withdrawals (hereinafter referred to as "net withdrawals," although continuing to take into account the adjusting entry described above) 2 made by Dr. Thielking from the corporation during 1979 and 1980 are constructive dividends under sections 301 and 316 3 or loans. The controlling factor in the determination of this issue is whether at the time of the withdrawals, the parties intended that the amounts would be repaid. Berthold v. Commissioner,404 F.2d 119 (6th Cir. 1968), affg. a Memorandum Opinion of this Court; Haag v. Commissioner, 88 T.C.     (March 16, 1987).4 We must examine all the factors and circumstances surrounding the transactions. J.S. Biritz Construction Co. v. Commissioner,387 F.2d 451, 453 (8th Cir. 1967), revg. a Memorandum Opinion of this Court; Haag v. Commissioner,supra.In making this determination, we must keep in mind that respondent's determination that the withdrawals*239 are dividends is presumptively correct and petitioners have the burden of proving that respondent's determination is erroneous. Rule 142(a), Tax Court Rules of Practice and Procedure; Welch v. Helvering,290 U.S. 111 (1933); Miele v. Commissioner,56 T.C. 556, 567 (1971), affd. without published opinion 474 F.2d 1338 (3d Cir. 1973). *240 Factors that the courts have considered in making this determination include the following: the extent to which the shareholder controlled the corporation; whether the corporation had a history of paying dividends; the existence of earnings and profits; the magnitude of the advances; how the parties recorded the advances on their books and records; whether the parties executed notes; whether security was provided for the advances; whether there was a fixed schedule of repayment; whether interest was paid or accrued; whether the shareholder made any repayments; whether the shareholder was in a position to repay the advances; and whether the advances to the shareholder were made in proportion to his stockholdings. Alterman Foods, Inc. v. United States,505 F.2d 873, 877 n.7 (5th Cir. 1974); J.S. Biritz Construction Co. v. Commissioner,supra at 456-457; Haag v. Commissioner,supra; Pierce v. Commissioner,61 T.C. 424, 430-431 (1974); Saigh v. Commissioner,36 T.C. 395, 417-422 (1961). 5None of these factors, standing alone, is*241 determinative. Alterman Foods, Inc. v. United States,supra at 876-877 n.6. These objective factors are useful in determining whether there is a true intention to repay. Alterman Foods, Inc. v. United States,supra at 877. Based on the entire record in this case, we conclude that petitioners have failed to carry their burden of proving that Dr. Thielking intended to repay the amounts withdrawn during 1979 and 1980 at the time they were withdrawn. Petitioners place a great deal of emphasis upon the corporation's accounting of the withdrawals as loans on its books and records as evidence of an intent to repay the advances. This factor is not determinative without further evidence substantiating the existence of a bona fide loan. Chattanooga Savings Bank v. Brewer,17 F.2d 79 (6th Cir. 1927); Baird v. Commissioner,25 T.C. 387, 395 (1955); Meyer v. Commissioner,45 B.T.A. at 239. Petitioners also rely on the repayments made by Dr. Thielking as further evidence of an intent to repay. However, the repayments did not result in a reduction of the net balance due; there was, instead, a slight*242 increase in the balance due from 1979 to 1983. Also, contrary to petitioners' assertions, the repayments were not all in cash, but many were credits toward the withdrawals (e.g., in 1979, the reduction of the loan balance owed by the corporation to Dr. Thielking, Dr. Thielking's bonus declared by the corporation, Dr. Thielking's personal accounts receivable that were collected by the corporation, and the proceeds from the sale of Dr. Thielking's Jeep). Under these circumstances, we do not believe that the repayments and credits are persuasive evidence that the withdrawals were bona fide debts of Dr. Thielking. Baird v. Commissioner,supra at 394; Meyer v. Commissioner,supra at 240. Petitioners also claim that the advances were not in proportion to the shareholdings inasmuch as Dr. Thielking held a shareholder interest of 2.79 percent (30/1074) during the years when the withdrawals were made. The other 97.21 percent (1044/1074) was owned by the trustee of the Paul W. Thielking, O.D., P.C. Employee Stock Ownership Trust, of which Dr. Thielking was the sole beneficiary. It is well settled that the disbursement of corporation earnings to*243 a shareholder may constitute a dividend to such shareholder notwithstanding that it is not in proportion to stockholdings or that some shareholders do not participate in its benefits. This principle is especially true where the record fails to disclose that the nonparticipating shareholders complained of such distributions. Lincoln National Bank v. Burnet,63 F.2d 131 (D.C. Cir. 1933), affg. Lincoln National Bank, Executor v. Commissioner,23 B.T.A. 1304 (1931); Baird v. Commissioner,supra at 395-396, and cases cited therein. Here, there is no evidence that the nonparticipating shareholder, i.e., the trustee, complained of the distributions. It is clear that Dr. Thielking controlled the corporation through his positions as the sole director and the president of the corporation. In addition, he was the sole beneficiary of the employee stock ownership trust. No minutes of shareholder meetings or resolutions by the board were made authorizing the withdrawals. No notes were executed and no collateral was provided. There was no fixed schedule of repayments and no set maturity date. Although journal entries were made on the*244 books of the corporation to reflect accrued interest, no actual cash payments of interest were made by Dr. Thielking. The corporation did not have a history of declaring dividends although the corporation had substantial earnings and profits. In addition, the advances were substantial in comparison to the income of the corporation. While the income of the corporation increased from 1975 through 1980, Dr. Thielking's salary for the same time period decreased with the exception of the year 1979. Although his employment contract with the corporation specified a salary of $42,000.00 each year, Dr. Thielking's salary was, in fact, lower than this amount for the years 1977, 1978, and 1980. These facts contradict petitioners' argument that the withdrawals were loans. Petitioners insist that Dr. Thielking made the withdrawals from the corporation in good faith and intended to repay them. We do not have the benefit of Dr. Thielking's testimony with respect to this point. Even so, constructive dividends have been found contrary to the expressed intent of the parties. Sachs v. Commissioner,277 F.2d 879, 882-883 (8th Cir. 1960). The objective criteria outlined above*245 are more reliable indicators of the true nature of the transactions than the mere declaration of the parties. Alterman Foods, Inc. v. United States,505 F.2d at 877. Furthermore, we have considered petitioners' remaining arguments concerning the characterization of the withdrawals, and find them not persuasive. Based on all of these factors, we conclude that the net withdrawals in taxable years 1979 and 1980 were not bona fide loans that Dr. Thielking intended to repay, but rather were constructive dividends to the extent of the corporation's earnings and profits in each respective taxable year pursuant to sections 301(c)(1) and 316. 6 As a result of our determination that the net withdrawals were constructive dividends, and not loans, petitioners are not entitled to deduct interest expenses claimed to have been incurred with respect to the withdrawals. *246 Investment Tax Credit IssueOn August 8, 1976, Dr. Thielking and Alfred T. Zimmerman formed a partnership, known as Z-King Leasing Company (hereinafter referred to as "Z-King"), which was engaged in leasing property. Z-King was a non-corporate lessor during the taxable years 1976, 1977, and 1978. Dr. Thielking owned 55 percent of Z-King and Alfred T. Zimmerman owned 45 percent of Z-King during the taxable years 1976, 1977, and 1978. On September 9, 1978, Dr. Thielking and Alfred T. Zimmerman dissolved the partnership. The property leased by the partnership, its equipment, and its fixtures were transferred to Dr. Thielking. Subsequently, Dr. Thielking continued to operate Z-King as a sole proprietorship and reported its gross receipts and expenses on a Schedule C to the joint tax returns of Dr. Thielking and Leila C. Thielking for the taxable years 1978, 1979, and 1980. The leasing transactions were conducted in the following manner. Z-King purchased property to meet a lessee's specifications. The lessee paid several months of lease payments in advance to Z-King. Z-King obtained a loan or financing from various third-party financial institutions in order to purchase*247 the leased property, using the leases as collateral. In addition, Z-King required the lessee to make its lease payments directly to the third-party financial institution that had lent the funds to Z-King, and assigned the lease to the third-party financial institution. The contracts entered into between Z-King and the third-party financial institutions stated, "The undersigned borrower assigns to the financial institution, title and interest in the lease and the property covered thereby." Dr. Thielking, as a partner of Z-King from 1976 through 1978 and then as sole proprietor from September 1978 through September 1980, personally guaranteed the loans made by the third-party financial institutions. At the termination of the leases, the third-party financial institution remitted lease payments in excess of the amount of principal and interest on the respective loans to Z-King. The lease agreements provided that it was the lessee's responsibility to keep the equipment in good repair, to furnish all parts for the equipment, and to service the equipment. The lessee agreed to indemnify the lessor against all claims. The lessee was required to pay the lessor all license fees, registration*248 fees, assessments, and taxes that might be imposed upon ownership or use of the equipment, except those based upon the lessor's income. The lessee was required to keep the equipment insured against all risks. Also, the lease agreements provided that they could not be cancelled during their terms. Z-King paid a non-refundable lease commission to an employee for arranging the leases. The issue for decision is whether petitioners are entitled to claim the investment tax credit under section 38. The parties agree that if petitioners meet the requirements of section 46(e)(3)(B) relating to noncorporate lessors, they are eligible for the credit. That section provides, in pertinent part, as follows: (e) LIMITATIONS WITH RESPECT TO CERTAIN PERSONS. -- * * * (3) Noncorporate lessors. A credit shall be allowed by section 38 to a person which is not a corporation with respect to property of which such person is the lessor only if -- * * * (B) the term of the lease (taking into account options to renew) is less than 50 percent of the useful life of the property, and for the period consisting of the first 12 months after the date on which the property is transferred to the lessee*249 the sum of the deductions with respect to such property which are allowable to the lessor solely by reason of section 162 (other than rents and reimbursed amounts with respect to such property) exceeds 15 percent of the rental income produced by such property. Petitioners contend that, for purposes of the 15-percent requirement, the nonrefundable lease commissions paid to an employee of Z-King for arranging the leases constitute ordinary and necessary expenses under section 162. Respondent, on the other hand, argues that these commissions are capital expenditures that must be spread ratably over the term of the lease. The principal function of the term "ordinary" in section 162(a) is to differentiate between expenses which are currently deductible and those which are capital in nature. Commissioner v. Lincoln Savings and Loan Association,403 U.S. 345, 353 (1971). Expenditures to acquire assets or secure benefits which last beyond the taxable year must be capitalized. Section 1.263(a)-2(a), Income Tax Regs.; Seligman v. Commissioner,84 T.C. 191, 201 (1985), affd. 796 F.2d 116 (5th Cir. 1986). It is well settled that commissions*250 paid by a lessor to brokers or agents for securing and negotiating a lease for a term of years are not ordinary and necessary expenses that can be deducted in the year paid, but are capital expenditures to be amortized over the term of the lease. Griffiths v. Commissioner,70 F.2d 946 (7th Cir. 1934), affg. 25 B.T.A. 1292 (1932); Home Trust Co. v. Commissioner,65 F.2d 532 (8th Cir. 1933), and cases cited therein.7Petitioners also argue that reasonable compensation should be allowed to the partners and the proprietor for services rendered. There is nothing in the record, however, to support such an allowance. Based on the foregoing, we conclude that petitioners have failed to prove that they satisfy the 15-percent test set forth in section 46(e)(3)(B). Petitioners must satisfy both the 15-percent test and the 50 percent test set forth in the statute in order to qualify for the investment tax credit. As a result of our decision that petitioners have failed to satisfy the 15-percent test, *251 we need not address the parties' arguments concerning the 50-percent test. Petitioners argue that because their leasing activity did not constitute an abusive tax shelter, they are entitled to the investment tax credit irrespective of their ability to show that they satisfy the specific requirements set forth in section 46(e)(3). That same argument was raised by the taxpayer in Ridder v. Commissioner,76 T.C. 867, 876 (1981). This Court rejected the argument, stating the following: In drafting section 46(e)(3)(B), Congress could have chosen a rule based upon the benefits and burdens of ownership in light of all the relevant facts and circumstances. * * * But they did not. Instead, Congress decided to impose two hard-and-fast tests * * *. In effect, Congress chose a more easily administered approach (which, for taxpayers, provides predictability) and sacrificed some small measure of perfect equity. * * * See also Hokanson v. Commissioner,730 F.2d 1245, 1250 (9th Cir. 1984), affg. a Memorandum Opinion of this Court. To reflect the foregoing, Decision will be entered under Rule 155.Footnotes*. By order of the Chief Judge, these cases were assigned to Judge Wells↩ for decision and opinion.1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the years at issue.↩1. The corporation loan from Dr. Thielking at the beginning of the taxable year was credited towards the withdrawals. ↩2. Dr. Thielking's year end bonus was credited towards the withdrawals. ↩3. The corporation's collection of Dr. Thielking's accounts receivables was credited towards the withdrawals. ↩4. The proceeds from the sale of Dr. Thielking's Jeep were credited toward the withdrawals.↩1. The stipulation of facts states that this amount is to "[c]orrect prior year payment from D. W. Hansen."↩2. Respondent has chosen to focus on the net withdrawals rather than the total withdrawals. See Meyer v. Commissioner,45 B.T.A. 228, 241↩ (1941). 3. SEC. 301. DISTRIBUTIONS OF PROPERTY. (a) IN GENERAL. -- Except as otherwise provided in this chapter, a distribution of property (as defined in section 317(a)) made by a corporation to a shareholder with respect to its stock shall be treated in the manner provided in subsection (c). (b) AMOUNT DISTRIBUTED. -- (1) GENERAL RULE. -- For purposes of this section, the amount of any distribution shall be -- (A) NONCORPORATE DISTRIBUTEES. -- If the shareholder is not a corporation, the amount of money received, plus the fair market value of the other property received. * * * (c) AMOUNT TAXABLE. -- In the case of a distribution to which subsection (a) applies -- (1) AMOUNT CONSTITUTING DIVIDEND. -- That portion of the distribution which is a dividend (as defined in section 316) shall be included in gross income. (2) AMOUNT APPLIED AGAINST BASIS. -- That portion of the distribution which is not a dividend shall be applied against and reduce the adjusted basis of the stock. (3) AMOUNT IN EXCESS OF BASIS. -- (A) IN GENERAL. -- Except as provided in subparagraph (B), that portion of the distribution which is not a dividend, to the extent that it exceeds the adjusted basis of the stock, shall be treated as gain from the sale or exchange of property. SEC. 316. DIVIDEND DEFINED. (a) GENERAL RULE. -- For purposes of this subtitle, the term 'dividend' means any distribution of property made by a corporation to its shareholders -- (1) out of its earnings and profits accumulated after February 28, 1913, or (2) out of its earnings and profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made. Except as otherwise provided in this subtitle, every distribution is made out of earnings and profits to the extent thereof, and from the most recently accumulated earnings and profits. To the extent that any distribution is, under any provision of this subchapter, treated as a distribution of property to which section 301 applies, such distribution shall be treated as a distribution of property for purposes of this subsection. For purposes of the application of the above-quoted sections 301 and 316, the term "property" is defined by section 317(a) as "money, securities, and any other property; except that such term does not include stock in the corporation making the distribution (or rights to acquire such stock)." ↩4. Although Haag involved a reallocation of income under section 482, this Court also considered objective factors relevant to a determination of whether shareholder loans should be recharacterized as constructive dividends. Haag v. Commissioner,supra.↩5. See Guyer v. Commissioner,T.C. Memo. 1985-210↩.6. The remainder of the net withdrawals in each respective taxable year not constituting a dividend under section 316 would first be applied against and reduce the adjusted basis of Dr. Thielking's stock in the corporation, and would then be treated as gain from the sale or exchange of property. Secs. 301(c)(2) and 301(c)(3).↩7. Lemos v. Commissioner,T.C. Memo. 1973-117; Thielking v. Commissioner,T.C. Memo. 1987-201↩.