MICHAEL STROUTH and ROSANNE STROUTH and JOSEF BIEBER and EVELYN BIEBER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Strouth v. Commissioner
Docket Nos. 25259-86; 25260-86.
United States Tax Court
T.C. Memo 1987-552; 1987 Tax Ct. Memo LEXIS 544; 54 T.C.M. (CCH) 1009; T.C.M. (RIA) 87552; November 2, 1987. *545 Stuart L. Rosow, Patricia Hennessey, for the petitioners. Christopher Sterner, for the respondent. POWELL
MEMORANDUM FINDINGS OF FACT AND OPINION POWELL, Special Trial Judge:[1] Respondent determined deficiencies of $ 657 and $ 333 in petitioners Michael and Rosanne Strouth's income tax for the taxable years 1981 and 1982, respectively, as well as a deficiency of $ 2,720 in petitioners Josef and Evelyn Bieber's income tax for the taxable year 1981. The issues for decision are (1) whether certain fees paid for services with respect to leasing activities are deductible under section 162; [2] and (2) whether advance rental payments received at the commencement of each lease should be included in income in the years they were received for purposes of the "15-percent test" as set out in section 46(e)(3)(B). FINDINGS OF FACT
*546 Some of the facts have been stipulated. The stipulation of facts and accompanying exhibits are so found and incorporated herein by reference. Petitioners Michael and Rosanne Strouth were married during the years in question and resided in Wappingers Falls, New York when they filed their petition. Petitioners Josef and Evelyn Bieber were also married during the years in question, and resided in Poughkeepsie, New York at the time they filed their petition. Both sets of petitioners timely filed joint returns with the Internal Revenue Service Center in Andover, Massachusetts. During the calendar years 1981 and 1982, petitioner Michael Strouth had a 2.325 percent interest in S.L. Leasing Company, a partnership. For the calendar year 1981, petitioner Josef Bieber was a partner in the following partnerships: Partnership
Partnership Interest
C&R Leasing Company
3-1/3 percent
Northeastern Leasing Company
6-2/3 percent
J.K. Leasing Company
6.74 percent All of the partnerships [3] are general partnerships organized under the laws of New York for the purpose of engaging in the business of purchasing and leasing equipment. During the years in question, the *547 respective partnerships purchased various items of equipment. Each item of equipment was purchased solely with equity contributions made by the partners and was placed in service by the partnership as the user through a lease to an unrelated party. The equipment purchased and leased by the partnerships during 1981 and 1982 included telephones and telephone systems, photocopying machines, typewriters and other office equipment. The leases were placed predominantly with local companies, partnerships and professional offices, and generally the terms of the leases ranged from three to five years. Pursuant to their respective partnership agreements, the partnerships each engaged H.V. Funding Inc., a New York corporation, to provide certain services to each partnership. [4]H.V. Funding, Inc. performed these services predominantly during the first 12 months after the equipment was delivered. None of the partnerships had a staff of its own. *548 In consideration for H.V. Funding, Inc.'s services, each of the partnerships paid to H.V. Funding, Inc. an amount equal to 10 percent (11 percent for leases entered into after March 22, 1982) of at the cost of each item of equipment leased by each of the partnerships at the time the equipment was leased. The aggregate amounts of management fees paid by each partnership to H.V. Funding, Inc. during the years at issue are as follows: Aggregate
Partnership
Year
Amount paid
S.L. Leasing Company
1981
$ 23,517.97
S.L. Leasing Company
1982
12,426.59
C&R Leasing Company
1981
20,942.75
Northeastern Leasing
1981
10,619.21
Company
J.K. Leasing Company
1981
8,396.70
Except for the fees paid to H.V. Funding, Inc., the partnerships had no other expenses with respect to each property leased that are alleged to be an ordinary and necessary business expense under section 162. The partnership leases were arranged through personal contacts of the principals of H.V. Funding, Inc., and through contacts made by Robert Vitale, a vice president of H.V. Funding, Inc., in his position as sales manager of Telequip Electronics, a company that manufactured and installed *549 office telephone systems. A small percentage of the 1982 leases was obtained through another salesman's efforts. The salesman was compensated in an amount equal to 2.5 percent of the cost of any equipment purchased and leased through his efforts. On its Partnership Return of Income (Form 1065), each of the partnerships reported the cost of new property acquired and placed in service by the partnership during the years in question and deducted as an ordinary and necessary expense, in the year paid the amount paid to H.V. Funding Inc. with respect to each item of equipment. The aggregate amounts reported and deducted by each partnership are as follows: Cost of
Property
Amount
Partnership
Year
Reported
Deducted
S.L. Leasing Company
1981
$ 218,841.00
$ 24,041.00 S.L. Leasing Company
1982
124,143.00
14,796.00
C&R Leasing Company
1981
206,685.00
22,942.00
Northeastern Leasing
1981
102,840.00
10,621.00
J.K. Leasing Company
1981
79,394.00
8,822.00
In computing their taxable income for the years at issue petitioners Michael and Rosanne Strouth and petitioners Josef and Evelyn Bieber included their distributive shares of the ordinary *550 income of each partnership in which they were partners during the years at issue and claimed investment tax credit based on their distributive shares of the cost of new property placed in service by each such partnership. The amounts included in income and the amounts of investment tax credit claimed by petitioners are as follows: Amount of
Amount
Investment
Included
Tax Credit
Petitioners
Partnership
Year
In Income
Claimed
Michael & Rosanne
S.L. Leasing
1981
$ 19.00
$ 509.00
Strouth  Company
Michael & Rosanne
S.L. Leasing
1982
749.00
289.00
Strouth  Company
Josef & Evelyn
C&R Leasing
1981
1,158.00
689.00
Bieber  Company
Josef & Evelyn
Northeastern
1981
2,915.00
686.00
Bieber  Leasing
Company
Josef & Evelyn
J.K. Leasing
1981
1,448.00
535.00
Bieber  Company
In addition to the monthly rental payments, each partnership received at the time the lease commenced advanced rentals equal to three months' rent. Under the terms of the leases used by the partnerships for equipment leased after June 8, 1982, the partnership was required to hold the advance rents as security. As a matter *551 of practice, each partnership held such advance rentals as security and, if the lessee complied with all of the terms of the lease, applied such advance rentals to the last three rental payments due under the lease. Each partnership followed this practice for those leases entered into before June 8, 1982, even though the lease was silent on the treatment of such advance rentals. The partnerships had unrestricted use and control of the advance rent during the entire lease terms. Pursuant to the terms of the leases entered into by the partnerships, the partnerships were not required to, and in fact did not, segregate the advance rent from their operating funds or pay interest to the lessees on account of their payment of the advance rent. The partnerships included the advance rent in the rental income which they reported on their income tax returns. Pursuant to the terms of the lease entered into by S.L. Leasing Company subsequent to June 8, 1982, S.L. Leasing Company was obligated, if the lessee was not in default under the terms of the lease involved or any other lease with S.L. Leasing Company, to either refund the advance rent to the lessee upon return of the leased equipment *552 or, solely at the option of S.L. Leasing Company, to apply the advance rent to the rent due for the last three months of the lease term. Respondent determined that the fee paid by each partnership to H.V. Funding, Inc. with respect to each lease was a capital expenditure that should be amortized over the term of each lease. In addition, respondent disallowed the investment tax credit claimed by petitioners Michael and Rosanne Strouth and Josef and Evelyn Bieber for property placed in service by the partnerships on the ground that the partnerships did not meet the requirement of section 46(e)(3)(B). OPINION Section 38 allows a credit against tax for investment in certain depreciable property. However, the availability of the credit in the case of certain noncorporate lessors, such as the partnerships and petitioners, is limited by section 46(e)(3)(B), which provides, in pertinent part, as follows: (e) Limitations with Respect to Certain Persons. -- * * * (3) Noncorporate Lessors. -- A credit shall be allowed by section 38 to a person which is not a corporation with respect to property *553 of which such person is the lessor only if -- * * * (B) the term of the lease (taking into account options to renew) is less than 50 percent of the useful life of the property, and for the period consisting of the first 12 months after the date on which the property is transferred to the lessee the sum of which are allowable to the lessor solely by reason of section 162 (other than rents and reimbursed amounts with respect to such property) exceeds 15 percent of the rental income produced by such property.
Thus petitioners may not claim an investment tax credit if, during the first 12 months of the lease term, the deductions with respect to the leased property which are allowable solely by reason of section 162 are equal to or less than 15 percent of the rental income produced by such property. With respect to each lease, the parties agree that, if the portion of the fee paid to H.V. Funding, Inc. that is deductible under section 162 during the first twelve months of each lease term exceeds 15 percent of the rental payments received during the first twelve months of each such lease, the partnerships are entitled to claim the investment tax credit pursuant to section 38 based *554 on the cost of the equipment purchased and leased by each partnership during the years in question. The first consideration is whether the fees paid by each partnership to H.V. Funding, Inc., or any portion thereof, are deductible under section 162. Section 162(a) provides that deductions shall be allowed for "all ordinary and necessary expenses paid or incurred * * * in carrying on any trade or business." In Commissioner v. Tellier,383 U.S. 687, 689-690 (1966) the Court stated: The principal function of the term "ordinary" in section 162(a) is to clarify the distinction, often difficult, between those expenses that are currently deductible and those that are in the nature of capital expenditure, which if deductible at all, must be amortized over the useful life of the asset * * * Petitioners contend that the majority of the services rendered by H.V. Funding, Inc. with respect to each lease occurred during the first twelve months after the property was placed in service by the partnerships. Consequently, the minor services rendered after the first twelve months are *555 insufficient to support a finding that the fees were paid to secure future benefits in the nature of separate and distinct capital assets. Respondent argues that the services rendered by H.V. Funding, Inc. after the first 12 months of each lease were significant and that the partnerships thus acquired a separate and distinct additional asset, i.e., the right to receive such future services. In addition, a number of services initially rendered by H.V. Funding, Inc., such as the arranging of the leases, the preparation of the lease documents and the preparation of the coupon books to facilitate rent payments, resulted in a benefit to the partnerships for the entire lease term. Consequently, the payment of each fee must be amortized over the life of the lease. Generally, expenditures to acquire assets or secure benefits beyond the taxable year must be capitalized. Sec. 1.263(a)-1(a), Income Tax Regs.; Seligman v. Commissioner,84 T.C. 191, 201 (1985), affd. 765 F.2d 116 (5th Cir. 1986). Although the mere presence of some possible *556 future benefit from an expenditure is not determinative, the fact that an expenditure is likely to give a long-lived benefit or is connected with the acquisition of an asset having an extended life is an important factor. Commissioner v. Lincoln Savings & Loan Assn.,403 U.S. 345, 354 (1971). See Nelson v. Commissioner,T.C. Memo 1985-292, affd. 793 F.2d 179 (8th Cir. 1986). Applying these principles to the instant facts, we conclude that the fees paid to H.V. Funding, Inc. were capital in nature. First, a substantial portion of each fee must be attributed to the services rendered in securing each lease. As we said in Thielking v. Commissioner,T.C. Memo 1987-201: It is now well settled that commissions paid by a lessor to brokers or agents for securing and negotiating a lease for a term of years are not ordinary and necessary expenses that can be deducted in the year paid, but are capital expenditures to the amortized over the term of the lease. Griffiths v. Commissioner,70 F.2d 946 (7th Cir. 1934), *557 affg. 25 B.T.A. 1292 (1932); Home Trust Co. v. Commissioner,65 F.2d 532 (8th Cir. 1933), and cases cited therein. (Footnote ref. omitted.)
The procurement services performed by H.V. Funding, Inc. included securing potential leases, reviewing the lessee's application, checking the lessee's credit and trade references, drafting lease documents, ordering the equipment which was to be leased, insuring that the equipment to be leased was properly delivered and installed, and arranging for the payment of each partnership for the equipment. The expenses for these services are capital, since they secure for the partnerships the right to receive benefits under each lease that last well beyond the taxable year of the expenditure. Second, we find that the remaining services rendered by H.V. Funding, Inc. after the first twelve months of the lease were not insubstantial and "insignificant." [5] In Seligman v. Commissioner, supra, this Court held that amounts paid at the inception of a lease for future services represent capital expenditures which must be spread *558 ratably over the life of the lease, because they created a separate and distinct asset in the form of the right to have administration and management services performed during the entire lease term. Some of the management services performed by H.V. Funding, Inc. included preparing the partnerships' Federal and state tax returns, satisfying the partnership' tax liabilities from their checking accounts, preparing financial statements for the partnerships, maintaining the partnerships' records and checking accounts, and seeing to collection problems and delinquent lessees. These future services were significant, and of sufficient value such that the fees paid to H.V. Funding Inc. for those services created a separate capital asset. Selgman v. Commissioner, supra at 201-203; Thielking v. Commissioner, supra.[6]
*559 Petitioners contend that approximately 90 percent of the total time spent by H.V. Funding in servicing the leases was spend during the first year. This may be true. But, the stream of income resulting from these leases extended well after the close of the first year, and it was these income benefits that were the raison d'etre for the transactions. These income benefits had to be collected, accounted for and relevant taxes had to be paid, and, while securing these benefits may not have been as time consuming as the initial efforts, they can hardly be characterized as insignificant. See Seligman v. Commissioner,796 F.2d 116, 119 (5th Cir. 1986), affg. 84 T.C. 191 (1985). The second issue is whether the advance rentals received by the partnerships at the time of signing the leases are required to be included in the rental income produced by the leased property for purposes of the "15-percent test" of section 46(e)(3)(B). Each partnership received at the time each lease commenced advance rentals equal to three months' rent. Prior to June 8, 1982, the partnerships utilized lease forms which did not characterize the advance rent or the partnerships' *560 obligations with respect to the advance rent. The leases entered into by S.L. Leasing Company after June 8, 1982, provided that the advance rent was to be applied to the last three payments due under the lease. However, the leases also provided that if the lessee was not in default under the lease or under any other lease between it and S.L. Leasing Company, the advance rent would be refunded to the lessee upon the return of the leased equipment or, solely at the option of S.L. Leasing Company, the advance rent could be applied to the last three payments due. There were no restrictions on use of these funds, and, accordingly, the advance rents must be included in the partnerships' gross rental incomes in the years in which they were received, and in fact the rents were included on the partnerships' income tax returns. See Astor Holding Co. v. Commissioner,135 F.2d 47 (5th Cir. 1943); Indianapolis Power and Light Co. v. Commissioner,88 T.C. 964 (1987); City Gas Co. of Florida v. Commissioner,74 T.C. 386, 393-394 (1980, revd. on other grounds 689 F.2d 943 (8th Cir. 1982); J&E Enterprises, Inc. v. Commissioner,T.C. Memo. 1967-191. *561 Petitioners content that the advance rentals should not be included in rental income produced by the leased property during the first 12 months for purposes of the 15-percent test because such rental is not "attributable to" said period within the meaning of section 1.46-4(d)(3)(i), Income Tax Regs. However, section 46(e)(3)(B) states that the income component of the 15-percent test is the "rental income produced by" the property during the first 12 months after the date on which the property is transferred to the lessee. Since the advancement is income produced by the property during the 12-month period and in fact is included in gross income, the plain language of the statute requires that it be included in rental income for purposes of the 15-percent test. Petitioners' reliance on section 1.46-4(d)(3)(i), Income Tax Regs., also fails to take into account section 1.46-4(d)(3)(iii), Income Tax Regs., that states: "For purposes of the more-than-15-percent test, the gross income from rents of the lessor produced *562 by the property is the total amount which is payable to the lessor by reason of the lease agreement * * *." Accordingly, since the advance rent must be included in the partnerships' gross rental income during the 12-month period, it must also be included in rental income for the purposes of applying the 15-percent test. Finally, while the petitioners' argument that we take into account the intention of Congress in enacting section 46(e)(3)(B) may be well taken and the partnerships in this case were engaged in the active business of leasing equipment for an economic profit, we are not persuaded that they should prevail. Petitioners simply have not come within the technical requirements of the 15-percent test, as set forth in the plain language of section 46(e)(3)(B). As this Court stated in Ridder v. Commissioner,76 T.C. 867, 876 (1981): In drafting section 46(e)(3)(B), Congress could have chosen a rule based upon benefits and burdens of ownership in light of all the relevant facts and circumstances. * * * But they did not. Instead, Congress decided to impose two hard-and-fast tests * * *. In effect, Congress chose a more easily administered approach (which *563 for taxpayers, provides predictability) and sacrificed some small measure of perfect equity. * * * Decision will be entered for the respondent.
Footnotes
1. This case was assigned pursuant to the provisions of section 7456(d) (redesignated as section 7443A by the Tax Reform Act of 1986, Pub. L. 99-514, section 1556, 100 Stat. 2755) and Rule 180 et seq. ↩
2. All statutory references are to the Internal Revenue Code of 1954, as amended, and as in effect during the years in issue. ↩
3. The partnerships S.L. Leasing Company, C&R Leasing Company, J.K. Leasing Company and Northeastern Leasing Company are hereinafter collectively referred to as "the partnerships." ↩
4. For Northeastern Leasing company, such engagement was pursuant to a management contract; the other partnerships engaged H.V. Funding pursuant to their respective partnerships agreements. Under the agreements H.V. Funding was required to provide the following services to each partnership: (a) securing potential leases; (b) reviewing the application of each lessee; (c) checking the credit of each lessee; (d) checking the references of each lessee; (e) drafting the required lease documents; (f) giving to each partnership recommendations concerning each lease; (g) ordering the equipment to be leased; (h) insuring that the delivery and the installation were proper; (i) insuring that each lessee was satisfied; (j) taking car of any problems that might arise between the lessee and vendor of the equipment; (k) arranging payments by each partnership for the equipment; (l) insuring that the equipment was insured by the lessee; (m) preparing and filing UCC-1 statements to perfect the partnership interest in the equipment; (n) insuring that each lessee paid rent promptly and correctly, receiving rental payments and depositing them into the partnership checking account, and maintaining the partnership checking account; (o) preparing coupon books for rent payment for the term of each lease; (p) paying sales tax from the partnership checking account and filing New York State sales tax returns on a monthly or quarterly basis as required; (q) preparing annual financial statements for the partnerships and Federal income tax returns including Schedule K-1 for each partner; (r) contacting delinquent lessees and recommending legal action when necessary. ↩
5. Petitioners argue that the services to be rendered by H.V. Funding, Inc. after the first twelve months of the lease were of insignificant future benefit and that consequently the service fees were not capital in nature. They cite NCNB Corp. v. United States,684 F.2d 285 (4th Cir. 1982), and Briarcliff Candy Corp. v. Commissioner,475 F.2d 775 (2d Cir. 1973), to support this proposition. However, both of those cases involved established expenses, incident to the expansion of existing businesses. In any event, we have found that the payment of the service fees did create a right to a substantial future benefit. See Commissioner v. Lincoln Savings & Loan Assn., supra↩ at 354. 6. Petitioners also contend that even if the fee is characterized as a capital expenditure, this Court must then determine the portion of the fee that is attributable to the first twelve months of the lease and the portion that is considered to be paid for the capital asset. However, the cases cited by petitioners in support of this proposition, Bandes v. Commissioner,T.C. Memo. 1982-355, and DeLaCruz v. Commissioner,T.C. Memo. 1978-8, are inapposite. In those cases, respondent had challenged the timing of deductions for certain prepaid fee expenses and service fees. There was no question of allocation between capital and ordinary expenditures because the parties agreed that the expenses represented ordinary and necessary business expenses. Cf. O'Heron v. Commissioner,T.C. Memo 1981-648↩.